GEORGE PRESSTMAN *vs.* JOHN SILLJACKS.

*Landlord and Tenant—Construction of a deed purporting to be in Fee, but in fact only conveying a Leasehold estate—Notice— Estoppel—Right of Lessee, after his Landlord's title has expired, to purchase the Paramount title, and to deny the Title of his Landlord—Such purchase by him to be subject to any Equities of the Landlord—Action of Trespass for illegal Distress—Res adjudicata—Construction of Art. 51, sec. 14, of the Code, prohibiting Justices of the Peace from trying cases involving Titles to land—Measure of Damages.*

Property in the City of Baltimore was leased for the term of ninety-nine years, renewable forever. The leasehold interest became vested by mesne assignments in S. By proceedings for the sale of the real estate of S., a decree was obtained and a trustee was appointed to make the sale. This leasehold estate was included in the decree for sale, and was sold by said trustee to G. P. In the deed to G. P. it was spoken of as real estate, but by the special description of it in the deed and the references it was fully identified as this leasehold property. In the year 1852, G. P., supposing himself to be the owner of the fee, under said deed, (although in fact his estate then consisted of only seven years of unexpired leasehold with the privilege of renewal) executed a lease of the property for the term of ninety-nine years, renewable forever, and by mesne assignments the interest of his lessee became vested in J. S., who paid the rent to G. P. until the year 1877, when the term of G. P. was found to have long expired, and the reversioner's title and rights were discovered. J. S. then paid the reversioner a sum of money for arrearages of rent, and in consideration of a further sum, the fee was conveyed to him. J. S. afterwards refusing to pay the rent reserved in G. P's lease, the latter levied two distresses therefor. J. S. replevied the property distrained in each case before a justice of the peace. One justice decided in favor of J. S., and the other in favor of G. P. Both appealed to Baltimore City Court, where the judgment in each case was adverse to J. S. who paid the judgments and costs. In an action of trespass *q. c. f.* brought by J. S. against G. P., to recover for the entry thus made in making

the distresses, and the payments to which he was constrained, it was HELD:

1st. That G. P. did not take a fee in the property under the trustee's deed to him.

2nd. That the description of the property in that deed was such as to identify it as the leasehold property which S. had bought by deed duly recorded; and the whole title being of record all the parties in interest were affected with notice; so that however ignorant G. P. was at the time he leased the property, of the exact nature of his estate, his lease did in fact operate no further than as an assignment of the residue of his term.

3rd. That J. S. was not estopped from denying the title of G. P. as his landlord, that title at the time of his so denying it having expired by effluxion of time.

4th. That his paying to the reversioner the arrearages of rent for the whole period of his holding under G. P. after the latter's title had expired, together with the rent for the time he repudiated G. P's title, was a recognition of the reversioner's right, and equivalent to an abandonment of possession under G. P.

5th. That the purchase of the reversion by J. S. was in self-defence, and G. P. had no superior right over him to buy it.

6th. That if G. P. had any equity under his lease, and was not barred by laches as against the reversioner, to have through a Court of equity his lease renewed, J. S. took the fee subject to that equity.

7th. That J. S. was entitled to recover unless the judgments rendered against him in the replevin cases, growing out of the distresses, were to be regarded as adjudicating the question so as to prevent his recovery for the entry under the distress proceedings.

8th. That to render those decisions *res adjudicata* and as such an effective bar in a suit wherein the same matter was brought in issue, the tribunal making the decision must have jurisdiction over the whole subject-matter, and be competent to decide all the questions arising in the cause pertinent and important to the proper judgment in the premises.

9th. That under sec. 14, of Art. 51, of the Code, and the decisions of this Court, a justice of the peace had no power to determine whether G. P's title had or had not expired; and Baltimore City Court sitting as an appellate tribunal, though hearing the case *de*

*novo*, had no more power or jurisdiction in that regard than the justice of the peace.

10th. That it made no difference, so far as this case was concerned, that it did not appear in the record of those proceedings, that this question was raised before the justices or in the Baltimore City Court.

11th. That a prayer by the plaintiff defining the measure of damages to be the amount of the judgments and costs on the distresses, was properly granted.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the two following prayers :

1. If the jury shall believe that the defendant in this cause held, by intermediate assignments, a leasehold interest, which was derived under a lease from Ann Fell, dated July 5th, 1769, to Alexander McMechen, then the legal title of the said Presstman expired at the expiration of the lease to the said McMechen, to wit, on the 5th of July, 1868, and that if the jury shall believe that the said defendant levied the distresses on the premises after the expiration of said ninety-nine years, to wit, on the 29th of December, 1877, and 27th of April, 1879, then the said plaintiff is entitled to recover the amount of the judgments and costs on the said distresses, even though the jury shall believe the plaintiff became tenant of the defendant on the 25th day of May, 1859.

2. That inasmuch as the conveyance from Charles F. Mayer, under which the defendant holds, recites that the title which the said Mayer proposed to convey was the title of John Steele ; then if the jury shall find the deeds offered in evidence, tracing the title to John Steele, then the title of the said Steele is for a leasehold interest only,

which expired in 1868, and the defendant had no title under the conveyance from Mayer at the date of the distresses levied in 1877 and 1879.

And the defendant offered the eight following prayers:

1. That under the pleadings and evidence in this case, the plaintiff is not entitled to recover damages.

2. That if the jury shall find from the evidence that the plaintiff in this case took possession of the property described in plaintiff's declaration, as assignee under the lease of Geo. Presstman and wife, to John S. Stansbury, dated second day of April, 1856, he cannot recover for the distraints specified in the declaration.

3. That the plaintiff cannot recover any damages on account of any proceedings in Court, such as given in evidence and specified in the declaration.

4. That the plaintiff is not entitled to recover any sums of money which he may have paid by reason of the proceedings given in evidence in the two cases of distraint, as specified in the declaration, and that the right to issue the defendant's distraints is *res adjudicata.*

5. That the plaintiff is not entitled to recover any larger sum than will cover actual damage, and no part of the money specified in the declaration as having been paid by the plaintiff in consequence of the proceedings issued by defendant to distrain the property on the premises.

6. That there is no evidence that at the time of issuing the distraints for rent, John Silljacks, the plaintiff, had been coerced to pay any amount of money as ground-rent to any other person than George Presstman, and that he cannot recover any damages for any rent he may have voluntarily paid to George H. Williams, trustee.

7. That the deed from Charles F. Mayer, trustee, cannot be impeached in this action, and no testimony can be admitted to affect its validity.

8. That there is no evidence in this case that the plaintiff has sustained any actual damage whatever, and he cannot recover in this action.

The Court (DOBBIN, J.,) granted the prayers of the plaintiff, and the sixth and seventh prayers of the defendant, and refused his first, second, third, fourth, fifth and eighth prayers.

The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., ALVEY, ROBINSON and IRVING, J.

*Benjamin C. Presstman* and *Orville Horwitz*, for the appellant.

The City Court of Baltimore City had jurisdiction to give the judgments recited in the record, and the amount of said judgments could not be recovered in an action of trespass like the present, but said judgments were a bar to the recovery of damages for an alleged illegal distress, the proceedings before the justice of the peace in the warrants of distress having been held valid by a Court of competent jurisdiction. *Revised Code, Art.* 68, *sec.* 6; *Deitrich vs. Swartz,* 41 *Md.,* 196; *Randle vs. Sutton,* 43 *Md.,* 64.

There is no evidence on the record to show that the plaintiff in the replevins before the justices of the peace or in the City Court raised any question as to the jurisdiction of said justices or of the City Court, and this Court will not, by any inference not sustained by the facts contained in the record, pronounce the said judgments invalid.

It being proved by John Silljacks, the plaintiff in the replevins, that he paid to the defendant (Presstman,) the amounts of the judgments and costs recovered by the defendant (Presstman,) in the appeal cases from said

justices in the above mentioned distraint proceedings, *and offered no other oral testimony* that said payments of money were voluntary payments, and could not have been recovered back either in this form of action or in any other. *Gordon vs. M. & C. C. of B.*, 5 *Gill*, 231; *M. & C. C. of B. vs. Lefferman*, 4 *Gill*, 426.

The appellant (Presstman,) having made and executed a lease to John S. Stansbury, and others, under which the appellee became assignee and took possession of the property mentioned in the record, and continued to pay the ground rent reserved for many years after the time of the alleged expiration of lease, the appellee is estopped from denying the title of the appellant to the property, and he has no right to purchase an adverse title to the lessor under whom he demises, having purchased the leasehold interest aforesaid, and having paid rent for many years, after the alleged expiration of title, and without notice of such purchase to Presstman. *Jackson vs. Harper*, 5 *Wendell*, 246; *Sharp vs. Kelly*, 5 *Denio*, 431; *Holt vs. Martin*, 51 *Penn. Rep.*, 499; *Taylor on Landlord and Tenant*, 544, 705; *Hodges vs. Shields*, 18 *Ky.*, 827; *Eister vs. Paul*, 54 *Penn. Rep.*, 196.

By the very terms of the conveyance from Williams, *et al.* to Silljacks, offered in evidence by the appellee, and which is relied on for his pretended title, the existence of the lease (in 1877,) is admitted and the existence of the ground rent affirmed; and not only so, but the actual payment thereof, with all moneys up to the date of the deed, (for more than twenty-one years,) is made part of the consideration. In the face of this deed, it does not lie in the mouth of the appellee to say that the title of the appellant expired in 1868.

As assignee of Presstman's lessee, Silljacks, (the appellee,) cannot dispute the title under which he entered into possession and enjoyed the property. *Taylor's Landlord and Tenant*, sec. 629; *Jackson vs. Hinman*, 10 *Johns.*, 292;

Presstman *vs.* Silljacks.

*Bailey vs. Kilburn,* 10 *Met.,* 176; *Benedict vs. Morse,* 10 *Met.,* 223; *Hodges vs. Shields,* 18 *Ky.,* 828; *Eister vs. Paul,* 54 *Penn.,* 196.

A tenant cannot constitute himself a possessor in spite of his landlord, nor can he set up an adverse title until he restores the possession. *Jackson vs. Davis,* 5 *Cowen,* 134; *Steele vs. Koons,* 7 *Harris,* 208; *Rankin vs. Tenbrook,* 5 *Watts,* 386.

*John E. Semmes* and *Jno. H. B. Latrobe,* for the appellee.

The principle of estoppel, as affecting the relation of landlord and tenant, is only applicable to the title at the *time* the lease was granted, and does not in any way preclude the tenant from showing that such title has expired. *Taylor's L. & T.,* (*4th Edition,*) *secs.* 629 *and* 707; *Jackson vs. Rowland,* 6 *Wend.,* 666; *Benny vs. Chapman,* 6 *Pick.,* 124; *Giles vs. Ebsworth & Hays,* 10 *Md.,* 333; *Chitty on Pleads.,* (*6th Am. Ed.,*) (*Title Estoppel,*) *note m, p.* 630; 1 *Wash. Real Prop., book* 1, *ch.* 10*a, sec.* 8, (*top page,* 565;) *St. John vs. Wm. Quitzow,* 72 *Illinois,* 334; 1 *Taylor on Evidence, sec.* 102, (*7th Ed.;*) *Ryder vs. Mansell,* 66 *Maine,* 167; *Mountenoy vs. Collins,* 1 *Ellis & Black.,* 630; *Claridge vs. Mackenzie,.* 4 *Man. & Gran.,* 143; *Lamson vs. Clarkson,* 113 *Mass.,* 348.

The principle of *res adjudicata* has been set up, and the records of judgments, obtained in the City Court on appeal from magistrates have been filed. In order that a judgment should operate as an estoppel, it is necessary that the former adjudication was had before a Court of competent jurisdiction to hear and determine the whole matter in controversy embraced in this suit; if the trial went off on a technical defect, or because the Court had no *jurisdiction* to decide the question, the judgment will be *no* bar to a future action. *Freeman on Judgments, sec.* 252; *Bigelow vs. Winder,* 1 *Gray,* 299; *Shafer vs. Stonebraker,* 4 *G. & J.,* 345; *Greenleaf on Ev., secs.* 524, 528,

530 ; 1 *Taylor on Ev., p.* 1438 ; *Brunner vs. Ramsburg,* 43 *Md.,* 325.

The question of title, which is the gist of the action in the present case, could not have been raised in the case decided in the City Court on an appeal from a magistrate for want of jurisdiction. *Code, Article* 51, *sec.* 14 ; *Deitrich vs. Swartz,* 41 *Md.,* 196 ; *Randle vs. Sutton,* 43 *Md.,* 64.

The appellee's second prayer relies upon the principle that the grantee under a deed is bound by the recitals in the deed under which he claims ; and as the deed from Mayer to Presstman recites that the interest conveyed to Presstman is that of John Steele, and as by reference to John Steele's title, it will appear that the same is a leasehold interest, which expired in 1868, the appellant is estopped by said recital from denying that his interest was a leasehold. *Funk vs. Newcomer,* 10 *Md.,* 301 ; *Ridgely vs. Bond and. Wife,* 18 *Md.,* 433.

IRVING, J., delivered the opinion of the Court.

The appellee sued the appellant in an action of trespass, *quare clausum fregit.* The *narr.* contained several counts, but the gravamen of the action was alleged illegal distresses levied by the appellant on the appellee, whereby the appellee was made to pay certain sums of money unjustly. The appellant replied not guilty, and that he was the owner of the fee, and that he did what he did do in the exercise of his lawful rights as landlord. We learn from the record that Edward Fell, who was the owner in fee of certain real estate in Baltimore City, devised a part thereof to his son William, and gave to his wife, who was his executrix, the power of leasing the estate so devised, for the benefit of the son. Anne Fell accordingly, on the fifth day of July, 1769, by lease in due form demised the *locus in quo* to Alexander McMechen, for ninety-nine years, with the usual covenant for renewal for-

·ever, (upon the payment of the rent reserved, and the amount stipulated as the price for renewal,) upon reasonable demand, at any time during the term created by the lease. By a series of successive assignments, this leasehold estate became the property of John Steele. By proceedings for the sale of his real estate, a decree was obtained, and Charles F. Mayer was appointed trustee. This leasehold estate was included in the decree for sale, and was sold by said trustee to the appellant. In the deed to the appellant it is spoken of as real estate, but by the special description of it in the deed and the references, it is fully identified as this leasehold property coming from Anne Fell, lessor. Clothed with the fee, as it is alleged he supposed himself to be, by this deed from Charles F. Mayer, although in fact he had but the unexpired time that remained of the lease, on the 15th of May, 1852, (when his estate consisted of only seven years of unexpired leasehold, with privilege of renewal;) the appellant executed a lease to Henry Straus and others for ninety-nine years, renewable forever. These lessees assigned to Adam Senz, and he assigned to Silljacks, the appellee.

The appellee paid the reserved rents till (1877) eighteen hundred and seventy-seven, when the appellant's term was found to have long expired, and the reversionary title and rights were discovered. The appellee then paid the reversioner the sum of three hundred and seventy-three dollars and twenty cents for arrearages of rent; and in consideration thereof, and of the additional sum of two hundred and fifty-two dollars and fifty cents, the fee was conveyed to Silljacks on the first day of February, eighteen hundred and seventy-seven.

Silljacks, afterward, having refused to pay the rents reserved in Presstman's lease, the appellant levied distresses. Silljacks replevied the property distrained, in each case, before a justice of the peace. One justice decided in favor of Silljacks, and the other in favor of

Presstman. Both appealed to Baltimore City Court, wherein the decision, in each case, was adverse to Silljacks, and he paid the judgments and costs. It is for the entry thus made, in making the distresses, and the payments to which he was wrongfully constrained, that the appellee brought his action of trespass in the Superior Court of Baltimore City. He recovered and the defendant appealed. In behalf of the appellant it is urged.

First. That he had a fee in the property of which Silljacks was tenant.

Secondly. That the appellee could not deny his title, nor his right to levy the distresses.

Thirdly. That the whole matter was *res adjudicata,* by reason of the replevin suits, the appeals to the City Court, and the judgments therein in favor of the appellant.

It is very certain there is no evidence in the record by which Presstman takes a fee. His deed from Charles F. Mayer, trustee, in its recitals, does speak of it as real estate; but that does not make it so. The description of the property is such as to identify it perfectly as the leasehold property which Steele had bought from James Sterrett by deed duly recorded. The whole title was of record, and all the parties in interest were affected with notice; so that however ignorant the appellant was at the time he made the lease to Straus and others, of the exact nature of his estate, his lease to Straus and others did, in fact, operate no further, than as an assignment of the residue of his term.

As to the second point that the appellee could not dispute Presstman's title, because Presstman was his landlord, and therefore could not maintain his action of trespass, there is a material distinction to be observed. The general rule is, without doubt, that a tenant cannot dispute his landlord's title—that he is estopped by having accepted a lease. That estoppel has been long, if not always, held to be restricted to the denial of the landlord's

title at the time he made the lease, and the tenant entered under it; and both in suits for the recovery of rent, and in actions of this character, the tenant has been permitted to show, by way of defence, that the title of his landlord, which existed at the time the tenant entered under him, has expired by effluxion of time. This doctrine obtains both in England and in this country. The case of *Claridge vs. Mackenzie*, 4 *Manning & Granger*, 148, was a case very similar in its facts to this. It was a suit for trespass for two distresses, levied on the plaintiff, under which he paid the rent and costs of distress proceedings under protest, and under the instruction of the Court the plaintiff recovered. On a motion for a new trial, a rule *nisi* was granted, and the question was fully discussed and reviewed by the Court, and the verdict was not disturbed, all the Judges, four in number, concurring in opinion upon the law of the case. The tenant in that case, who was the plaintiff, had entered originally, as the appellee here did, not under the defendant, but under a sub-lessee of the defendant, and had paid the rent to Mackenzie the defendant. Discovering that the defendant's term had expired, he refused to pay the rent, and the distresses followed. TINDAL, Chief Justice, said, "it was competent for the plaintiff to show that the defendant's title had expired." He adds that "the plaintiff was in possession of the premises; and after the expiration of the defendant's interest, he continued to occupy as tenant by sufferance under the party who was entitled to the intermediate term of three-quarters of a year." The case of *Balls vs. Westwood*, decided by Lord ELLENBOROUGH, so earnestly relied on by the counsel for the appellant, is there considered, and is stated by Justice TINDAL, to have been afterward overruled by Lord ELLENBOROUGH himself, in *Doe dem. Lowden vs. Watson*. The same rule was adopted in England, *dem. Syburn vs. Slade*, 4 *T. R.*, 682, and is quoted by the Court in *Claridge vs. Mackenzie*. Subsequently, in the

case of *Mountnoy vs. Collier,* 72 *E. C. L.,* (or 1 *Ellis & Blackburn,*) which was a case for use and occupation, the same doctrine was maintained and applied. In this country the decisions are numerous wherein the tenant, under circumstances like this case presents, has been permitted to show that his landlord's title has expired, or been transferred, or defeated. In *Duff vs. Wilson,* 69 *Pa.,* 316, Judge SHARSWOOD says, "It is always competent for a tenant to set up that the title of his landlord has come to an end subsequent to the date of the lease; and that whenever the enjoyment ceases by lawful title, rent, which is the recompense of enjoyment, also ceases." In *Shields vs. Lozear,* 34 *N. J.,* 496, by unanimous decision, the Supreme Court of New Jersey declare this to be the law. This case is strikingly analogous to the case before us. To analyze it, however, will unnecessarily extend this opinion. But it is insisted that before the tenant can avail himself of this privilege, he must solemnly and formally renounce his allegiance to his landlord, and formally attorn to some one else. TINDAL, Justice, in *Claridge vs. Mackenzie,* says, that was the opinion of Lord ELLENBOROUGH in *Balls vs. Westwood,* but that he subsequently altered it. COLE-RIDGE, J., in *Mountnoy vs. Collier,* says: "I think it would be hard upon a tenant, if, in order to enable him to do this, he was obliged in all cases actually to go out of possession; and that, if there is a new arrangement with the person who really has the title to hold under him, it should be equivalent to going out of possession." And in the same case, ERLE, J., in a concurring opinion, said, "the main question is whether the defendant may show that as a defence, he not having given up possession. I think it is competent for him to do so; for a tenant is liable to the person who has the real title, and may be forced to pay him, either in an action for use and occupation, or in trespass for the mesne profits." The case already cited from 34 *N. J.,* is authority to the same effect.

The facts of this case bring it within the principles thus decided.  The fact that he purchased the outstanding title as he did, and when he did, which is pressed by the appellant against him, does not affect the question nor his rights in this case.  The question here is, can he show the expiration of the appellant's title and right to claim rent from him, which upon the authorities cited we think he may do.  He has paid to the reversioner the arrearages of rent for the whole period of his holding under Presstman, after Presstman's title expired, together with the rent for the time he repudiated Presstman's title.  This certainly was a recognition of the reversioner's right, and equivalent to an abandonment of possession under Presstman.  For an additional consideration he takes the conveyance of the reversioner's title.  Ordinarily, fidelity to the landlord does inhibit the purchase of the outstanding title as against the landlord.  There is no collision of authority on this question, where the tenancy under a rightful landlord exists or continues.  It is the taking of secret advantage of the landlord that the law forbids.  It is the using of his possession and information as tenant, behind the back of his landlord, and to the prejudice of his landlord, which the law discountenances.  In 18 *Kentucky Reports*, 831, in the case of *Hodges vs. Shields*, the Court says: "We suppose that no case can be found in which it has been held that the acquisition of title by a tenant for years, by a fair purchase of the land after the execution of the lease under which he took possession, was a breach of his fidelity to his landlord, or that such title enured to the benefit of the latter.  The tenant in such case, cannot be regarded as holding the title in trust for his landlord, especially in a case like the present, where it is shown the landlord had no title at all."  In this case the title of the appellant had expired many years before the appellee discovered it, we may reasonably suppose, or he would not have subjected himself to the payment of

double rent. In self-defence, he buys the reversion, which Presstman had no superior right over him to buy. The appellant had a covenant for the renewal of his lease on specified terms, at any time during the term, on demand; but he had not exercised his privilege so as to continue his rights over the appellee as his tenant. If he had any equity under his lease, and was not barred by laches, as against the reversioner, to have through a Court of equity his lease renewed, Silljacks took the fee, subject to that equity; but in this case we cannot settle that question, nor regard such equity, if it exist. We can only deal with the legal rights and status of the parties. This being our view of the law on the questions discussed, the appellee was entitled to recover, unless the judgments rendered against him in the replevin cases growing out of the distresses, are to be regarded as adjudicating the question, so as to prevent recovery, because of the entry under the distress proceedings. This was not pleaded formally, but has been relied on as a necessary consequence of the evidence introduced by the appellee to sustain his case. It is relied on both as an absolute bar, and as an objection to the rule of damages laid down by the Court in the instruction to the jury. As has already been stated, upon the distresses being levied, the appellee replevied before justices of the peace, one of whom decided for the appellant, and the other for the appellee. On the appeal, the City Court decided both cases adversely to the appellee in this Court, who was compelled to pay, and did pay the judgments and costs. It is settled law, that to render these decisions *res adjudicata*, and as such an effective bar in a suit wherein the same matter is brought into issue, the tribunal making the decision, must have jurisdiction over the whole subject-matter, and be competent to decide all the questions arising in the cause pertinent and important to the proper judgment in the premises. Under the 14th sec. of Art.

51, of the Code of Public General Laws, a justice of the peace is not competent to hear and decide any case wherein the title to land is involved.   Under that section and the decisions of this Court thereon, the justice of the peace had no power to determine whether Presstman's title had, or had not expired; and Baltimore City Court, sitting as an appellate tribunal, though hearing the case *de novo*, had no more power or jurisdiction, in that regard, than the justice of the peace.

This being so, the justices of the peace, nor the City Court could in those proceedings, give the appellee the benefit of his defence against the appellant, that the appellant's title had expired, and with it his right to demand rent.

It does not make any difference so far as this question is concerned, that it does not appear in the record of those proceedings which have been offered in evidence, that this question was raised before the justice or in the City Court. It is enough for the purposes of this decision, that the law of which we must take judicial cognizance, limited the jurisdiction of those tribunals, and prevented inquiry into the title of land, however it might arise.   Testing the instructions granted, and the prayers refused, to the granting and refusal of which respectively exception was taken, by the principles of law we have found applicable, we find no error in the rulings of the Superior Court. The objections to the plaintiff's first prayer, made in this Court, that it assumes as a matter of fact, that Presstman had no other title than that which he obtained by deed from Charles F. Mayer, and also put to the jury the determination of a question of law, that is, required the jury to find whether the defendant held a leasehold estate, and that the evidence was insufficient to sustain the prayer, cannot be considered in this Court under its rules, as it does not appear by the record that such infirmities were complained of in the Court below, and excepted to for that reason.

The appellant's objection to the measure of damages established by granting the plaintiff's first prayer, cannot be sustained. He was certainly not damnified by that mode of stating the damages which the plaintiff was entitled to recover. The plaintiff was entitled to recover for all the injury directly produced by the unlawful entry and conduct of the defendant. *Ridgely vs. Bond and Wife*, 17 *Md.*, 14. In this case the declaration charges the breaking and entering of plaintiff's close; and by other counts sets out the specific acts which were committed, and alleges the taking and keeping of his goods, until replevin secured the possession again, but which suits he finally lost, and was compelled to pay the money claimed for rent and costs of suit. This suit, therefore, may be regarded as a suit for the wrongful entry on the land, and also for *de bonis asportatis.* If this were an action of trover, the measure of damages would be the value of the goods with interest. Here the goods were taken, and in consequence of it, in order to regain possession, the plaintiff was compelled to pay rent illegally, and the cost of the distresses, which but for the distresses he would not have had to pay. Having become his own avenger for a claim, which the law did not justify him in making, and which if it had arisen in another forum could have been successfully resisted, but could not be defended fully because of the prohibition of the inquiry before a justice of the peace, or the appellate Court to which the case went from the justices, he must be answerable for the necessary consequences of his act. He cannot complain that the rule of damages has been thus restricted.

The second instruction for the plaintiff simply states the legal effect of certain title papers offered in evidence, if the jury should find the same, and was properly granted.

In the rejection of the first six prayers of the defendant below, the Court committed no error. Under the law as

we have laid it down, none of them should have been granted. The judgment will be affirmed.

*Judgment affirmed*

*with costs.*

(Decided 18th December, 1879.)