LEFFERAGE B. MOXLEY *v.* THEODORE E.
ACKER ET UX.

[No. 155, September Term, 1981.]

*Decided July 22, 1982.*

The cause was argued before MURPHY, C. J., and SMITH,
ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Robert F. Kahoe, Jr.,* with whom were Clark, Birch &
Kahoe on the brief, for appellant.

No brief filed for appellees.

COUCH, J., delivered the opinion of the Court.

In August, 1981, the appellant, Lefferage B. Moxley, filed a Complaint Against Forcible Detainer in the District Court for Harford County against Theodore and Cynthia Acker. That court ruled in favor of Moxley. The appellees appealed to the Circuit Court for Harford County on the ground that force, or the threat of force, was a necessary element of the cause of action and no such force had been used. The circuit court reversed the judgment of the district court on that basis. The appellant petitioned for certiorari to this Court, and we granted it to consider the important issue of public interest involved.

This dispute arose after the appellant sold the appellees a tract of land improved by a mobile home under a land installment contract in August, 1979. The appellees paid the appellant a down payment and began making monthly payments of principal and interest. On May 4, 1981, the appellees' counsel notified the appellant that it was his opinion that the installment contract violated Maryland Code (1974, 1981 Repl. Vol.), Real Property Article, § 10-102 (f),[1] and that the appellees "elect to avoid the contract under the forementioned statute ... and by this act of canceling the Land Installment Contract demand an immediate refund of all payments and deposits made since date of contract foresaid."

On May 7, the appellant, through counsel, agreed that the contract violated the statute and that "your clients would be entitled to repudiate this Contract." He also requested appellees' counsel to advise him of the amount of the claim and when the appellees "will be prepared to vacate the premises, as the last payment they made was more than thirty days ago." Appellees' counsel replied on May 8 that he would cooperate in the expeditious handling of the case, especially

---

1. That section allows the purchaser of land under an installment contract, under certain conditions not at issue here, the "unconditional right to cancel the contract and to receive immediate refund" of all monies paid on the contract.

in determining the amount of the appellees' claim, but that, "Needless to say a couple with three children all in school will need a reasonable amount of time to relocate." A month later, on June 9, appellant's counsel wrote appellees' counsel that if he (Mr. Acker, one of the appellees) wished to repudiate the contract, "he must do so and vacate the premises", that the matter must be settled promptly or the appellees must move out of the premises and the amount of the claim negotiated.

The appellees failed to vacate the property or to pay rent, although it is conceded that at no time did they use force or the threat of force to detain the property. The appellant then filed a Complaint Against Forcible Detainer in the District Court in August, 1981. That court, as noted above, held for the appellant. On appeal, following reversal by the circuit court, the appellant presents two issues: (1) whether force is a necessary element in the action of forcible detainer, and (2) even if it is, whether this Court should abolish that requirement.

The causes of action of forcible entry and forcible detainer were incorporated into Maryland law by Article 5 of the Declaration of Rights. It states:

> "That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity . . . ." Md. Const., Dec. of Rights, art. 5.

Kilty's *Report of English Statutes* reflects that the English statutes that created these causes of action were found to be applicable to the circumstances of the people and thus proper to be introduced and incorporated into Maryland law. W.

Kilty, *Report of English Statutes* 223, 227 (1811); [2] *Alexander's British Statutes* 262-64, 299-306 (2d ed., vol. 1, 1912). The English statutes involved here are primarily 15 Richard II, chapter 2 (1391) and 8 Henry VI, chapter 9 (1429); *see id.;* they have not been repealed by the Maryland legislature. *See* Code (1974, 1981 Repl. Vol.), Real Property Article, § 14-115. The origin of these statutes is recounted in G. Liebmann, *Maryland Practice* 82-83 (vol. 2, 1976):

> "At common law and prior to the enactment of the statute of 5 Richard 2d, Chapter 8 (1381) in the 14th century, whenever a right of entry existed the party entitled to the right could lawfully enter and regain his possession by force. This right of self-help was curbed by 5 Richard 2d Chapter 8 which limited entries under claim of right to entries 'not with strong hand, nor with a multitude of people, but only in a peaceable and easy manner.' This statute was enacted to meet problems existing in the period following the Black Death, in which public policy demanded that real estate vacated by death be put to early use, thus making desirable limitation of the former eviction rights of property owners, which were restricted to instances of forcible conduct by squatters. The limitations on eviction imposed by the statute remain in effect in England where, in consequence, large scale 'squatting' remains a contemporary problem in virtue of the lack of other statutory remedies for trespass, and a strict definition of what constitutes force. This limitation was supplemented by the Statute of 15 Richard II, Chapter 2 (1391) to provide that persons making unlawful forcible entries be imprisoned by justices

---

**2.** Although no official action was taken on this report, "in only two cases ... were additional Statutes decided to have been found applicable, and that, in no case, was one found applicable by Kilty taken out of the list by the Court of Appeals." Steiner, *Adoption of English Law in Maryland,* 8 Yale L.J. 353, 361 (1899). *See* Dashiell v. Attorney General, 5 H. & J. 392, 403 (1822) ("[Kilty's *Report*] was compiled, printed, and distributed, under the sanction of the State, for the use of its officers, and is a safe guide in exploring an otherwise dubious path.").

of the peace who on complaint were required to 'go to the place where such force is made.' The statute of 8 Henry VI, Chapter 9 (1429) provides the fountainhead of the present civil action. This statute extended the earlier prohibition to 'entries ... in peaceable manner, and after holding with force' provided that the statute should extend to cases 'where any doth make any forcible entry in lands and tenements, or other possessions, *or them hold forcibly.*' " (Emphasis added.)

Thus, the purpose of the statutes was to prevent outbreaks of violence which breached the peace, and to reduce the possibility of violent disputes over the possession of property with its attendant injuries and loss of life.

The issue in this case is whether force is required, or should be required, in the cause of action of forcible detainer. While it is clear that such a requirement existed in the English common law and was subsequently incorporated into Maryland common law, *see Roth v. State,* 89 Md. 524, 527, 43 A. 769, 770 (1899); *Clark v. Vannort,* 78 Md. 216, 219, 27 A. 982, 983 (1893), it is also clear that the common law is subject to change by this Court.

"It is true the common law of England has been adopted by the people of this State, but only so far as it could be made to fit and adjust itself to our local circumstances and peculiar institutions." *Denison v. Denison,* 35 Md. 361, 378 (1872), *quoted* in *Pope v. State,* 284 Md. 309, 341, 396 A.2d 1054, 1072 (1979).

Article 5 of the Declaration of Rights states the "Common Law of England, and ... the English statutes as existed on the Fourth day of July, [1776]; ... which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity ..." are incorporated into Maryland law. It is clear that it is proper for the judiciary to determine what part of the body of English court decisions and statutes are applicable to our situation today:

"Whether particular parts of the common law are applicable to our local circumstances and situation, and our general code of laws and jurisprudence, is a question that comes within the province of the Courts of Justice, and is to be decided by them. The common law, like our Acts of Assembly, are subject to the control and modification of the Legislature, and may be abrogated or changed as the General Assembly may think most conducive to the general welfare; so that no great inconvenience, if any, can result from the power being deposited with the judiciary to decide what the common law is, and its applicability to the circumstances of the State, and what part has become obsolete from *non-user* or other cause." *State v. Buchanan,* 5 H. & J. 317, 365-66 (1821) (opinion of Chase, C.J.), *quoted in Pope v. State,* 284 Md. at 341-42, 396 A.2d at 1073.

In *Lewis v. State,* 285 Md. 705, 715-16, 404 A.2d 1073, 1079 (1979), we changed the common law rule that an accessory could not be tried until the principal was sentenced because we were convinced that the rule was unsound in the circumstances of modern life and, "Whatever may have been the reason for the rule governing the sequence of the accessory's and principal's trials, that reason has long since disappeared." [3] *Id.* at 716, 404 A.2d at 1079. There, as here, the common law had its genesis in an ancient English statute that Kilty's *Report of the Statutes* determined was incorporated into Maryland law. *Id.* at 713, 404 A.2d at 1077.

The same reasoning applies to the issue in this case. Whatever may have been the reason for the requirement of force in the action of forcible detainer, that reason has long since disappeared. The public policy of Maryland dictates this result in order to reduce the possibility of violence when the rightful possessor of property attempts to remove one not entitled to such possession. Any other holding by this Court

---

3. In *Lewis,* we changed the rule prospectively because we believed a retroactive change would impinge on the basic fairness due to the defendant. 285 Md. at 713, 404 A.2d at 1077. The same considerations do not apply to this case.

would have the effect of requiring one whose property is unlawfully detained to provoke the detainer into violence in order for the cause of action to arise, which conduct could have the additional consequence of subjecting the lawful possessor to criminal charges for his conduct. Furthermore, such a holding would effectively deny to a landowner, who is not in a landlord-tenant relationship with the possessor, the remedy of summarily ejecting one who unlawfully detains his property without force, thereby forcing the landowner into the more time consuming and costly proceeding of ejectment. We hold today that the action of forcible detainer requires only that one unlawfully detain the property from the lawful possessor.

*Judgment reversed.*
*Costs to be paid by appellees.*