726 A.2d 837

**Beth S. EUBANKS**

v.

**FIRST MOUNT VERNON INDUSTRIAL LOAN ASSOC., INC.**

No. 579, Sept. Term, 1998.

Court of Special Appeals of Maryland.

April 2, 1999.

644

646

Michael J. Shelton (Shelton and Maddox, on the brief), Rockville, for appellant.

Phillip L. Felts (Schuman, Kane, Felts & Everngam, Chartered, on the brief), Bethesda, for appellees.

Argued before DAVIS, EYLER and SONNER, JJ.

EYLER, Judge.

This case presents the question, one of first impression in Maryland's appellate courts, whether an action against forcible detainer is an action under Maryland Code, Real Property ("RP") § 8–402, such that rent escrow relief may be awarded under RP § 8–118. The action was filed by the record owner of real property seeking possession of the property from one alleged to be unlawfully in possession. The Circuit Court for Anne Arundel County ordered, pursuant to the rent escrow provisions contained in RP § 8–118, that, pending a jury trial in that court, the person in possession pay into the registry of the court $1,500 per month for use and possession of the property, and further ordered, pursuant to RP § 8–402(b)(3), that the possessor file a bond in the amount of $5,000 with the clerk of the court as security for any damages found to be due. We affirm the judgment of the circuit court ordering the payment of rent escrow, but reverse the judgment with respect to the bond.

## I. Facts

On April 17, 1995, appellant, Beth S. Eubanks, borrowed $239,000 from appellee, First Mount Vernon Industrial Loan Association. The loan was evidenced by a note secured by a deed of trust on certain real property owned by appellant. After appellant defaulted on the loan, the parties negotiated and entered into a forbearance agreement. Pursuant to its terms, appellant delivered into escrow a deed in lieu of foreclosure. When appellant breached the agreement, the deed was

delivered to appellee, and on September 9, 1997, appellee recorded it among the Land Records of Anne Arundel County. Appellant remained in possession of the property during the above transactions.

Appellee filed suit in the District Court for Anne Arundel County seeking possession. Count One was an action against forcible detainer, and Count Two was an action for ejectment. Appellant elected a jury trial, and on October 14, 1997, the case was transferred from the district court to the Circuit Court for Anne Arundel County.

On October 6, 1997, prior to the transfer of the district court suit, appellant filed her own suit against appellee in the Circuit Court for Anne Arundel County, with an election for jury trial. Appellant alleged various acts of deception by appellee, in violation of State and Federal law, and sought rescission of the deed in lieu of foreclosure and monetary damages. On December 16, 1997, the two cases were consolidated, and an order was entered directing that all further pleadings and motions be filed in the case originally filed in circuit court.

On October 24, 1997, in the case transferred from district court, appellee filed a motion for a protective order requiring appellant to pay money into a court supervised escrow account on a monthly basis for use and possession of the property. On October 30, 1997, in the same case, appellee filed a motion *in limine,* in which appellee recited that appellant had challenged title to the property before the district court and, citing RP § 8–402(b)(3), requested a ruling that appellant not be permitted to offer any evidence challenging title without posting a bond as provided for in that section. On February 9, 1998, the circuit court entered an order in which it (1) required appellant to pay $1,500 per month into an escrow account for the use and occupancy of the property, pursuant to RP § 8–118, retroactive to the date of the original request for relief in the district court (October 8, 1997) and continuing during the pendency of the litigation, and (2) required appellant to post a

bond in the amount of $5,000, pursuant to RP § 8-402(b)(3).[1]

## II. Appealability of the Judgment

■ The circuit court certified its order as a final order for the purposes of appeal under Rule 2–602(b). That Rule permits a trial court in certain instances to order the entry of a final judgment "as to one or more but fewer than all of the claims or parties." Rule 2–602(b)(1). The judgment, however, "must be dispositive as to an entire claim or party before it may be certified as final and appealable." *Huber v. Nationwide Mutual Ins. Co.*, 347 Md. 415, 420, 701 A.2d 415 (1997). The term "claim," as used in the Rule, refers to a complete, substantive cause of action. *See Medical Mutual v. B. Dixon Evander & Assocs.*, 331 Md. 301, 308–09, 628 A.2d 170 (1993); *East v. Gilchrist*, 293 Md. 453, 458–59, 445 A.2d 343 (1982) (interpreting Rule 605 a, predecessor to current Rule 2–602); *Suitland Dev. v. Merchants Mortgage*, 254 Md. 43, 54, 254 A.2d 359 (1969) (same).

■ Appellee's complaint originally stated causes of action in forcible entry and detainer and ejectment, the latter of which was dismissed by consent. The only issues on appeal have to do with the propriety of the interlocutory order regarding rent escrow and a bond—the forcible entry and detainer claim is still pending. Consequently, the circuit court lacked authority to certify its judgment as final for purposes of appeal, and we do not have jurisdiction over the appeal under Rule 2–602(b).

■ For the reasons set forth below, however, we exercise jurisdiction over the appeal pursuant to Maryland Code, Courts and Judicial Proceedings ("CJ"), § 12–303(1) (1998).[2] Section 12–303 provides in pertinent part:

---

1. By consent of the parties, the order also dismissed Count Two of the complaint, the ejectment count, in the action transferred from district court.

2. Though the parties did not brief or argue the efficacy of CJ § 12–303(1) as a source of this Court's jurisdiction over the interlocutory

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

(1) An order entered with regard to the possession of property with which the action is concerned or with reference to the receipt or charging of the income, interest, or dividends therefrom, or the refusal to modify, dissolve, or discharge such an order.

The rent escrow and peculiar type of bond ordered by the circuit court in this case both fall within the category of judgments immediately appealable under CJ § 12–303(1).

Initially, we note that the precise meaning of CJ § 12–303(1) is ambiguous, as is the applicability of the statute to the order in this case. The statute apparently grants to an aggrieved litigant the right to take an immediate appeal from an interlocutory order that is injunctive in nature and decides on an interim basis the right to possession or the income from property. The right of immediate appeal from injunctions is expressly granted in other subsections of the same statute, however. *See* CJ § 12–303(3)(i)–(iii). It is also clear that not every order is appealable that merely refers to the receipt or charging of income, interest, or dividends from property.

■ The Court of Appeals recently reaffirmed the principle that "[w]here the meaning of the plain language of the statute, or the language itself, is unclear, 'we seek to discern legislative intent from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based.'" *Blitz v. Beth Isaac*, 352 Md. 31, 39–40, 720 A.2d 912 (1998) (quoting *Lewis v. State*, 348 Md. 648, 653, 705 A.2d 1128 (1998)). Furthermore, the language of a statute, where possible, should not be read so as to render other portions of the statutory scheme "meaningless, surplusage, superfluous, or nugatory." *GEICO v. Insurance Comm'r*, 332 Md. 124, 132, 630 A.2d 713 (1993). *See also*

order, we will, *sua sponte*, consider our own jurisdiction under the statute. *See Duffy v. Conaway*, 295 Md. 242, 254 & n. 8, 455 A.2d 955 (1983); *State v. McCray*, 267 Md. 111, 126, 297 A.2d 265 (1972).

*DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 445, 677 A.2d 73 (1996). In order to reveal the present meaning and applicability of the language of CJ § 12–303(1), we find it necessary to trace the genesis and development of that language.[3]

Before the language of CJ § 12–303(1) was first adopted, the Legislature had permitted immediate appeals from certain interlocutory orders of equity courts affecting the possession of property or the income derived from property. *See* Md. Code (1957), art. 16 §§ 90, 129; Md.Code (Flack 1951), art. 16 §§ 232, 233. Such orders were immediately appealable in the same manner as injunctions.[4] *See id.;* Md.Code (1957), art. 5 § 7(a)–(b); Md.Code (Flack 1951), art. 5 § 31. Article 16, § 129 of the Maryland Code (1957), titled, "Orders pendente lite regarding possession of property or income," provided:

> The court may, at any stage of any cause or matter concerning property, real or personal, on application, or of its own motion, pass such order as to it may seem fit, with regard to the possession of the same, pendente lite, or the receipt of the income thereof, on such terms preliminary thereto (as to security, etc.,) as to it may seem just, subject to the same right to move for its discharge, and the same right of appeal as is given in § 90.

Section 90 permitted appeals "in such manner and on such terms as is now allowed in cases of injunctions." Md.Code (1957), art. 16 § 90. Thus, courts of equity had broad power under § 129 to pass orders determining interim rights to property or the income derived therefrom pending a trial on

---

**3.** In interpreting the language of what is now CJ § 12–303(3)(v), Maryland's appellate courts have traced the development of interlocutory appeals beginning with British common law and enactments of the Maryland Provincial Assembly. *See Anthony Plumbing v. Attorney General,* 298 Md. 11, 18–23, 467 A.2d 504 (1983); *Della Ratta v. Dixon,* 47 Md.App. 270, 278–84, 422 A.2d 409 (1980). We need not repeat the historical origins of such appeals in our analysis of the relatively novel language of CJ § 12–303(1).

**4.** Orders with respect to injunctions are presently subject to immediate appeal under CJ § 12–303(3)(i)–(iii).

the merits of the claim, but any exercise of this power was subject to immediate appellate review.

In *Baker v. Baker,* 108 Md. 269, 70 A. 418 (1908), the Court of Appeals invoked this statutory scheme to exercise jurisdiction over an appeal from an order appointing a receiver to protect real property pending a final judgment with respect to the property. *See Baker,* 108 Md. at 271–73, 70 A. 418 (interpreting the Maryland Code (1904), article 16 § 192, a substantively identical predecessor to Maryland Code (1957), article 16 § 129). *Baker* involved a suit in equity for a sale of real property in lieu of partition in part against Isabel Baker, holder of two mortgages on the property, by certain heirs claiming interests in the property. *See id.* at 271, 70 A. 418. A portion of the property was occupied by Isabel Baker, and a portion was occupied by tenants paying rent to her. *Id.* at 275, 70 A. 418. Before the action could be heard on the merits, the heirs petitioned the equity court for the appointment of a receiver, and the court issued an order appointing two receivers "to collect and receive *all* rents accrued and to accrue from the real estate mentioned in these proceedings, during the pendency thereof." *Id.* at 276, 70 A. 418. The Court of Appeals concluded the order was immediately appealable under § 192, *id.* at 273, 70 A. 418, and held that although Mrs. Baker, as holder of the mortgages, might have had a right to petition the equity court for a receiver, the heirs had no such right, absent a showing of entitlement to the rents or a showing that the rents were jeopardized in some way. *See id.* at 276–77, 70 A. 418. By concluding that it had jurisdiction to hear the appeal, the *Baker* Court broadly interpreted the above statutory scheme to include interlocutory orders with respect to the income from property that mandate payments to a court appointed receiver, not merely payments from one party directly to another party.

The statutory right of immediate appeal from an interlocutory order with respect to the possession of property or the receipt of rents or income therefrom has survived subsequent modifications both by the General Assembly and the Court of Appeals and the elimination of distinctions between courts of

law and courts of equity in Maryland. In 1961, nearly 23 years before the elimination of separate courts of law and equity, the Court of Appeals adopted Rule 532, which provided courts of law with the power to issue interlocutory orders of the kind previously available only to equity courts under article 16, §§ 129, 130. That Rule provided, in part:

> A court may, subject to the provisions of Subtitle BB (Injunction), at any stage of an action, on motion or of its own accord, pass such order with regard to the possession of property with which the action is concerned or with reference to the receipt of or charging of the income, interest or dividends therefrom for any purpose, on such terms and conditions, as justice may require.

Md. Rules of Procedure, Rule 532 (1961). This language was broader than the language in § 129, encompassing the power under what was then § 130 to issue charging orders with respect to property. *See* Md.Code (1957), art. 16 § 130. The explanatory note to Rule 532 stated that the Rule was intended both to supercede article 16, § 129, and to apply the powers under the Rule to actions at law as well as in equity, "so that a law court would, for example, be permitted in a proper case to pass a charging order with respect to property which was the subject of the litigation, as e.g., to charge the rents issuing out of property involved in an ejectment or replevin action." Md. Rules of Procedure, Rule 532 (1961) (explanatory note). This Rule was substantively identical to Rule 572, which was adopted at the same time but was applicable only to courts of equity. *See* Md. Rules of Procedure, Rule 572 (1961).

In response to the adoption of Rule 532, the Legislature repealed article 16, § 129 in 1962, and enacted article 5, § 1A and article 5, § 7(h). *See* 1962 Md. Laws, ch. 36 §§ 1, 5, 6. Both article 5, § 1A and article 5, § 7(h) were modeled on the language of Rules 532 and 572 and provided for interlocutory rights of appeal in courts of law and equity, respectively.[5]

---

5. Laws of Maryland (1962), chapter 36, § 5 enacting article 5 § 1A, provided

These new statutes, unlike previous article 16 §§ 129 and 130, did not provide the *power* to issue orders then permitted by Rule 532 and Rule 572, but provided for the right of interlocutory appeal from orders issued pursuant to those Rules. The power to issue interlocutory orders of the type previously available to courts of equity under article 16 §§ 129 and 130 in effect had been separated from the statutes and provided for by Rule.

While there is still an express right of appeal from the type of orders that could be granted under Rules 532 and 572, these Rules were rescinded during the sweeping reorganization of the Maryland Rules in 1984. Though Rules 532 and 572 initially were consolidated in a single proposed reorganization rule that would have maintained their specific grant of authority, the Rules Committee decided not to recommend the adoption of the new rule. This decision is detailed in the minutes of the committee:

> Noting that he was deviating from the order of the agenda, Judge McAuliffe presented Reorganization Rule 2–541 for the Committee's consideration:
>
> Rule 2–541. ORDERS REGARDING PROPERTY
>
> Subject to the provisions of [Subtitle BB], a court may at any stage of an action, on motion of any party or on its own motion, enter an order with respect to possession of property relating to the action or with respect to the receipt or charging of income, interest, or dividends from such property. The order may include those terms and

---

Any party may appeal from any interlocutory order entered by a court of law with regard to the possession of property with which the action is concerned or with reference to the receipt of or charging of the income, interest or dividends therefrom or the refusal to modify, dissolve or discharge such an order.

. Laws of Maryland (1962), chapter 36, § 6 enacting article 5 § 7(h), added the following to the list of immediately appealable orders issued by a court of equity:

An order with regard to the possession of any property, or with reference to the receipt of, or charging of the income, interest or dividends therefrom, or the refusal to rescind, modify or discharge such an order.

conditions which the court deems appropriate. The person against whom the order is directed is not bound by the order until the person has received actual notice of the order, by personal service or otherwise. Any affected party or person may move to have the order modified, dissolved, or discharged.

Rule 2–541 was accompanied by the following explanatory note:

Although Reorganization Rule 2–541 is substantively the same as current Rules 532 and 572, the [Planning] subcommittee is of the opinion that this Rule should be deleted. Several reasons exist for this opinion.

First, the Rule is expressly subject to the provisions of Subtitle BB dealing with injunctions. If the procedural safeguards of that subtitle apply, there is clearly no need for the last three sentences of this rule. Subtitle BB already contains these provisions.

Secondly, the first sentence of the Rule appears to be stated in an overly-broad fashion. It is the subcommittee's belief that, absent statutory authority, a court cannot charge the income from property under any and all circumstances.

Finally, if courts do possess the power to take the action permitted by this Rule under any circumstances where the court deems such action to be appropriate, it could be argued that courts can do so directly under the provisions of Subtitle BB. All action permitted by this Rule is in the nature of an injunction.

Judge McAuliffe explained that clear statutory authority exists for entering an order charging the interest of a debtor partner with the payment of the unsatisfied amount of a judgment debt. In the subcommittee's opinion, the injunction procedure suffices to handle all other cases. The subcommittee therefore recommends the deletion of this rule.

There being no motion to the contrary, the subcommittee's recommendation was approved and the rule was deleted.

Md. Court of Appeals, Standing Comm. on Rules of Practice and Procedure, Minutes of June 19–20, 1981, pp. 18–19.

The broad language of Rules 532 and 572 did not purport to define every type of order that could be issued under their authority. Similarly, CJ § 12–303(1) does not purport to define every type of order that is subject to its grant of interlocutory appellate authority. Notwithstanding the Subcommittee's opinion that the powers previously granted by Rules 532 and 572 were adequately retained in existing authority regarding injunctions and charging orders, it is conceivable, although we have not conducted an extensive search, that statutes or rules conveying the authority to issue the type of orders subject to CJ § 12–303(1), other than injunctions and charging orders, either existed at the time Rules 532 and 572 were rescinded, or that such statutes or rules were enacted thereafter. The Committee apparently did not explicitly consider the continued appealability of this class of orders in the course of its decision to rescind Rules 532 and 572. As the Subcommittee noted, however, the authority to issue orders of the type described by Rules 532 and 572 would in the future require an express grant of such power, either by statute or rule. As long as CJ § 12–303(1) remains in force, therefore, we must look to the nature of the order actually granted in a given case, and determine the appealability of the order with reference to the language of § 12–303(1) in the context of the relevant legislative history, case law, and the purposes behind the statutory framework.

■ We conclude that the circuit court's order with respect to monthly rent escrow payments was an appealable interlocutory order under CJ § 12–303(1). Maryland Code, RP § 8–118 provides authority for a court to order the payment of "rents" into a court supervised escrow account when a possessor of real property unlawfully holds over. *See* Md.Code RP § 8–118(a), (b) (1996) (enacted July 1, 1982). As we mention

above, the notes to Rule 532 explained that the type of orders that were permissible in equity under article 16, § 129 could thereafter be issued by a court of law, and the note provided as an example an order charging the "rents" issuing from property under dispute in an ejectment action. As we discuss more fully below, the cause of action against forcible entry and detainer in Maryland, in its present form, is very similar to modern actions in ejectment. Moreover, orders allocating the receipt of income from property are subject to the same right of interlocutory appeal as orders "charging the rents" issuing from property. *See* CJ § 12–303(1). The rent escrow order in this case would have been within the scope of orders permitted by Rule 532 in 1961, and is therefore appealable under the statutory grant of appellate authority that exists today in CJ § 12–303(1) and has remained substantively unchanged since 1962.

Our analysis is not affected by the fact that the payments are flowing into a court supervised account, rather than directly from one party to another. The direct payment of rents into a court supervised account in this case is analogous to the direct payment of rents to be made to the receivers in *Baker, supra.*[6] The order in this case purports to protect the rents pending trial of the underlying property dispute, as apparently was the intention of the order subject to review by the Court of Appeals in *Baker.* The order for the payment of rent escrow in the case at bar, therefore, was an order with reference to the receipt of income from the real property that is the subject of appellee's forcible detainer action. As such, the order was appealable under CJ § 12–303(1).

We conclude that the $ 5,000 bond purportedly ordered pursuant to RP § 8–402(b)(3) is also subject to immediate appellate review under CJ § 12–303(1). The circuit court ordered the bond for the purpose of securing "damages arising from Defendant's plea of title and retention of the property." This language indicates that the trial court's purpose in

---

**6.** An order appointing a receiver is now appealable separately as an interlocutory order under CJ § 12–303(3)(iv) (1998).

ordering the bond was similar to the court's purpose in ordering rent escrow, and that the bond would have a similar effect. The court apparently sought to protect the value of appellant's retention of the possession of the property pending resolution of the underlying dispute. Like the rent escrow payments in this case, the bond is subject to the trial court's control, and eventually would be distributed at the direction of the court. For these reasons, the bond ordered by the circuit court relates to the receipt of income from the property in the same way as the rent escrow, and we therefore exercise jurisdiction under CJ § 12–303(1) to consider the bond order.

We note that RP § 8–402(b)(3) provides for a bond when a holdover defendant disputes title to the property. When such a dispute arises in the district court, the statute directs the court to order a stay of the pending holdover proceeding to permit the defendant to litigate a title dispute in circuit court with respect to the property. A bond properly ordered under RP § 8–402(b)(3) is held to ensure that the alleged title dispute is in fact prosecuted in a timely manner by the holdover defendant. Section 8–402(b)(3) does not authorize a bond to secure damages or to protect the value of the possession of the property for final distribution once the underlying title dispute is resolved. Moreover, it is unlikely, given our discussion in Part VI below, that a bond properly ordered under RP § 8–402(b)(3) could ever be considered by this Court on interlocutory appeal. In any event, we conclude that we are not presented with a proper RP § 8–402(b)(3) bond in this case. Consequently, while we exercise jurisdiction over the bond that was ordered in this case, we express no opinion as to whether a bond properly ordered under RP § 8–402(b)(3) would be appealable under CJ § 12–303(1).

### III. Arguments of the Parties

The substantive issues of this case center on the interpretation of §§ 8–118 and 8–402 of the Real Property Article as they apply to appellee's common law action against forcible detainer. Section 8–402(a) establishes the liability of a "tenant under any lease or someone holding under him" for actual

damages caused when such a person unlawfully holds over "beyond the termination of the lease." Md.Code, RP § 8–402(a) (Supp.1998). Subsection (b) defines the procedure to be followed when a landlord seeks possession of property and damages from one unlawfully holding over. The procedure set forth in subsection (b) primarily applies to an action by a landlord against a tenant holding over beyond the termination of a lease agreement. Under the express language of RP § 8–402(b)(4)(i), however, the provisions of subsection (b) apply to tenancies from year to year, by the month, and by the week, and "the same proceeding shall apply, so far as may be, to cases of forcible entry and detainer."[7] Section 8–118(a) provides that "[i]n an action under § 8–401, § 8–402, or § 8–402.1[8] of this article in which a party prays a jury trial," a court is authorized to order a tenant "to pay all rents as they come due during the pendency of the action." The proceedings established by § 8–402(b) are within the exclusive original jurisdiction of the district court. *See* CJ § 4–401(4); *Greenbelt Consumer Servs. v. Acme Markets,* 272 Md. 222, 230, 322 A.2d 521 (1974).

First, appellant contends that the action transferred from district court is not an "action under" § 8–402 because it is a forcible detainer action against a non-tenant, and as such is not included within §§ 8–401, 8–402, or 8–402.1. Consequently, there is no authority to enable the court to establish a rent escrow account. Appellant explains that a forcible detainer action was not created by §§ 8–401, 8–402, 8–402.1 or any portion of the Real Property Article but derives from British statutes adopted as part of this State's common law. Appellant relies on rules of statutory construction and argues that the Real Property statutes in question, by their very terms,

---

**7.** We understand the words "the same proceeding" to invoke the previous reference in the same paragraph to the "provisions of § 8–402(b)." Thus, the proceeding applicable to forcible entry and detainer actions is the proceeding of § 8–402(b) alone.

**8.** Section 8–401 is entitled, "Failure to pay rent"; Section 8–402 is entitled, "Holding Over"; and § 8–402.1 is entitled "Breach of lease."

only apply to landlords and tenants in a landlord-tenant relationship. If not interpreted to be so limited, appellant asserts that the statutes, all entitled as dealing with the landlord-tenant relationship, would be unconstitutional under the Maryland Constitution, article III, § 29 because of defective titling.

Alternatively, appellant argues that RP § 8–118, if applicable, only requires appellant to pay all "rents" as they become due. In this case, there was no tenancy and no rent due. At most, according to appellant, she should be liable for the fair market value of the use and occupancy of the property. If we agree with that proposition, appellant argues that the escrow amount actually set by the circuit court was without any basis and, thus, arbitrary and capricious.

Second, appellant contends that the circuit court was without authority to require the posting of a bond under RP § 8–402(b)(3). In support of this contention, appellant relies on the reasons set forth in support of her first contention but also asserts that, because of the consolidation of the action transferred from district court with the action originally filed in circuit court, the effect of the bond requirement is an unconstitutional interference with appellant's right to a jury trial. For that proposition, appellant relies primarily on *Lucky Ned Pepper's Ltd. v. Columbia Park & Recreation Ass'n*, 64 Md. App. 222, 494 A.2d 947 (1985).

Appellee acknowledges that there is no landlord-tenant relationship in this case and further acknowledges that an action for forcible detainer exists in Maryland by virtue of the adoption of British statutes in effect on July 4, 1776. In response to appellant, appellee asserts that the procedure in RP § 8–402(b) is applicable to a forcible detainer action, and thus, it is an action under RP § 8–402 within the meaning of RP § 8–118.

For the reasons set forth below, we agree with appellee that forcible entry and detainer actions are properly brought pursuant to RP § 8–402(b), and therefore are actions subject to the rent escrow provisions of RP § 8–118. We also hold,

however, that the bond provision of RP § 8–402(b)(3) does not apply on the facts of this case, and generally is inapplicable outside of an actual landlord-tenant relationship.

## IV. Legal Background

### A. *Forcible entry and detainer at common law*

Forcible detainer is a common law cause of action in Maryland that lies when one unlawfully detains property from the lawful possessor. *Moxley v. Acker*, 294 Md. 47, 53, 447 A.2d 857 (1982). It is distinguished from the common law misdemeanor of forcible entry, which we have recognized as

> an entry on real property peaceably in the possession of another, against his will, without authority of law, by actual force, or with such an array of force and apparent intent to employ it for the purpose of overcoming resistance that the occupant in yielding and permitting possession to be taken from him must be regarded as acting from a well-founded apprehension that his resistance would be perilous or unavailing.

*Dean v. State*, 13 Md.App. 654, 657, 285 A.2d 295 (1971) (quoting 35 Am.Jur.2d *Forcible Entry and Detainer* § 1, p. 891 (1967)). The restoration of the possession of real estate has always been the primary civil remedy for forcible detainer, although, as we discuss below, forcible detainer has been modified in Maryland since it was adopted from British statutes.

Under British common law, prior to the 14th century, a person entitled to possession of property could enter and take possession by force. *Moxley*, 294 Md. at 50, 447 A.2d 857 (citing 2 George W. Liebmann, *Maryland Practice* § 841, at 82–83 (1976)). The right of self help was curbed by various statutes enacted in the 14th century and early 15th century. *See id.* at 50–51, 447 A.2d 857. Under the primary statute against forcible entries, 5 Richard II, chapter 8 (1381), entries upon land were limited to entries "not with strong hand, nor with a multitude of people, but only in a peaceable and easy manner." 1 Julian J. Alexander, *British Statutes in Force in*

*Maryland* 247 (2d ed.1912); *Moxley,* 294 Md. at 50, 447 A.2d 857 (quoting Liebmann, *supra,* § 841, at 83). . The statute was enacted in order to "meet problems existing in the period following the Black Death, in which public policy demanded that real estate vacated by death be put to early use, thus making desirable limitation of the former eviction rights of property owners." Liebmann, *supra,* § 841, at 83.

■ A cause of action against forcible detainer was created by 8 Henry VI, chapter 9 (1429). *See* Alexander, *supra,* at 299. That statute provided in part,

> [F]rom henceforth where any doth make any forcible Entry in Lands and Tenements, or other Possessions, or them hold forcibly, after Complaint thereof made within the same County where such Entry is made ... the Justices or Justice ... shall cause, or one of them shall cause, the said Statute duly to be executed.... [A]nd if it be found ... that any doth contrary to this Statute, then the said Justices or Justice shall cause to reseise the Lands and Tenements so entered or holden as afore, and shall put the Party so put out in full Possession of the same Lands and Tenements so entered or holden as before.

1429, 8 Hen. 6, ch. 9, *reprinted in,* Alexander, *supra,* at 301–03. Pursuant to this statute, in order for a claimant to regain possession of property wrongfully detained, a justice of the peace had to summons a jury to visit the property and make a decision.[9] The statutes 5 Richard II, chapter 8 and 8 Henry

---

9. The Court of Appeals explained the early procedures and remedies applicable to actions against forcible entry and detainer in *Clark v. Vannort,* 78 Md. 216, 27 A. 982 (1893):

> By the Statute of 8 Henry VI, ch. 9, confirming the previous Act of 15 Richard II, ch. 2, a justice of the peace shall inquire of a forcible entry or detainer, and on such inquiry shall direct warrants to the sheriff to summon indifferent persons dwelling next about the lands so entered to inquire of such entries. Under this statute every justice of the peace was authorized to make inquisition upon a forcible entry or detainer.
>
> It thus appears that two summary remedies were open to a person forcibly deprived of the possession of his property. The first, and formerly perhaps the most expeditious, was that by a justice upon his

VI, chapter 9 were incorporated into Maryland common law by article 5 of the Declaration of Rights and have not been repealed by the Maryland Legislature. *Moxley*, 294 Md. at 49–50, 447 A.2d 857. *See also* RP § 14–115 (1996). As a creature of Maryland common law, the present forcible detainer cause of action is subject to change by the Maryland judiciary. *See Moxley*, 294 Md. at 51, 447 A.2d 857.

In *Clark v. Vannort*, 78 Md. 216, 27 A. 982 (1893), the Court of Appeals stated that a forcible detainer occurs

> when a man who enters peaceably afterwards detains his possession by force; as if he threatens a corporal damage to him who attempts to enter. [A]nd the same circumstances of violence or terror which will make an entry forcible, will also make a detainer forcible. Even a termor, it seems, is guilty of a forcible detainer if he holds over with force after the expiration of his term, though no attempt to enter be made.

*Clark*, 78 Md. at 219, 27 A. 982 (citations omitted). The requirement that the property be detained by force or threat of force was deleted by the Court of Appeals in 1982. *See Moxley*, 294 Md. at 53, 447 A.2d 857. In *Moxley v. Acker*, the Court briefly reviewed the history of the cause of action against forcible detainer, and concluded that actual force in the detention of property should no longer be required:

> Whatever may have been the reason for the requirement of force in the action of forcible detainer, that reason has long since disappeared. The public policy of Maryland dictates this result in order to reduce the possibility of violence when the rightful possessor of property attempts to remove one

---

own view or inspection of the premises and his decision upon the facts in evidence before him. His power was limited however to the commitment of the offender, and did not extend to a restitution of possession of the premises. The second remedy restored possession of the premises by the warrant of the justice directed to the sheriff, as in the case of a tenant holding over; and until recently this warrant could only have been issued after the finding of an inquisition by a jury summoned for the purpose.

*Clark*, 78 Md. at 220, 27 A. 982 (citations omitted).

not entitled to such possession. Any other holding by this Court would have the effect of requiring one whose property is unlawfully detained to provoke the detainer into violence in order for the cause of action to arise, which conduct could have the additional consequence of subjecting the lawful possessor to criminal charges for his conduct.... We hold today that the action of forcible detainer requires only that one unlawfully detain the property from the lawful possessor.

*Moxley*, 294 Md. at 52–53, 447 A.2d 857. Although the statutes against forcible entry and detainer punished the previously legal resort to force in the recovery of property, *see* 4 William Blackstone, *Commentaries* \*148, such punishment being necessary during the Black Death in England, forcible detainer in present day Maryland has nothing to do with punishment. Since *Moxley*, forcible detainer has involved a purely civil dispute between a defendant in possession of real property and a plaintiff asserting a claim to the property.[10]

---

**10.** We note, by way of dicta, that this holding by the Court of Appeals may have additional implications for a modern action against forcible detainer. The British statute creating an action against forcible detainer, 8 Henry VI, chapter 9 (1429), restored possession to a plaintiff "so entered or holden as afore," and "so put out" of possession by the defendant. 1429, 8 Hen. 6, ch. 9, *reprinted in*, Alexander, *supra*, at 302–03. This language has been interpreted as a requirement that a plaintiff in a forcible detainer action prove that he or she was in prior actual possession in order to recover. *See* 3 William Blackstone, *Commentaries* \*179; Liebmann, *supra*, § 842, at 84. The requirement of prior actual possession was adopted by many states in early legislation modeled on the British forcible detainer statute. *See, e.g., Iron Mountain & Helena R.R. Co. v. Johnson*, 119 U.S. 608, 611, 7 S.Ct. 339, 30 L.Ed. 504 (1887); *Grammer v. Blansett*, 93 Ark. 421, 124 S.W. 1037, 1039 (1910); *Moldovan v. Fischer*, 149 Cal.App.2d 600, 308 P.2d 844, 849 (1957); *Phillips v. Gunby*, 117 A. 383, 385 (Del.Super.Ct.1921); *Florida Athletic & Health Club v. Royce*, 160 Fla. 27, 33 So.2d 222, 224 (1948) (en banc); *Goffin v. McCall*, 91 Fla. 514, 108 So. 556, 559 (1926); *Noble v. Neace*, 293 Ky. 496, 169 S.W.2d 308, 309 (1943); *Belcher v. Howard*, 212 Ky. 816, 280 S.W. 131, 131 (1926); *Cahill v. Pine Creek Oil*, 38 Okla. 568, 134 P. 64, 65 (1913); *Jones v. Czaza*, 19 Tenn.App. 327, 86 S.W.2d 1096, 1098 (1935); *Town of Grundy v. Goff*, 191 Va. 148, 60 S.E.2d 273, 278 (1950); *Priestley Mining & Milling Co. v. Lenox Mining & Dev. Co.*, 41 Wash.2d 101, 247 P.2d 688, 689 (1952);

### B. Statutory modification of forcible detainer

The Legislature, by Laws of Maryland (1882), chapter 355, Md.Code art. 53, §§ 4–6 (1888) (as amended by 1886 Md. Laws ch. 470),[11] adopted a procedure for dispossessing a tenant holding over by a proceeding before a magistrate without a jury. By the same act of 1882, chapter 355, the Legislature provided for notice to quit the respective tenancies and first included the statement in § 6, "and the same proceedings shall apply so far as may be to cases of forcible entry and detainer." See also Md.Code art. 53, § 6 (1888). Substantively unchanged, this phrase remains in RP § 8–402(b)(4)(i).

Since the 1882 enactment, forcible detainer actions have been brought pursuant to the statutory scheme of RP § 8–402(b). See Greenbelt Consumer Servs., 272 Md. at 227, 322 A.2d 521; Roth v. State, 89 Md. 524, 527, 43 A. 769 (1899) (citing art. 53, § 6); Clark, 78 Md. at 219, 27 A. 982 (same). In Clark, the Court had before it a person in possession of property who was not a tenant. Clark, 78 Md. at 219, 27 A. 982. The forcible detainer action was brought by a person who had been in possession and was seeking restitution of the premises. Id. The Court of Appeals held that article 53, § 6 applied, and stated:

> The proceeding was for a forcible detainer, not for a forcible entry and detainer; nor was it one by a landlord against his tenant for holding over after the expiration of his term. There is no statutory provision in the Maryland Code upon the subject of forcible entry or detainer apart from the

---

35 Am.Jur.2d Forcible Entry and Detainer §§ 6, 10, 14–27 (1967); 36A C.J.S. Forcible Entry and Detainer §§ 1, 7–15 (1961).

Although in its holding in Moxley the Court of Appeals states that a plaintiff in an action against forcible entry and detainer need only prove "that one unlawfully detain[s] the property from the lawful possessor," the issue of prior possession was not raised or briefed in this case, and we will therefore trust to future appellate decisions the question as to whether Moxley also dispensed with the requirement of prior possession.

11. The 1886 amendment is not material to the issues of this case.

brief declaration contained in the Code, Art. 53, sec. 6, that the proceedings relating to a tenant holding over "shall apply, so far as may be, to cases of forcible entry and detainer." Except for the provision just cited, proceedings in forcible entry and detainer, or forcible detainer alone, would be controlled exclusively by such of the early Acts of Parliament as are still in force in Maryland.

*Id.* Much more recently, the Court stated:

"Forcible entry and detainer" are those actions which may be brought under the authority of two British statutes, 15 Rich. 2, c. 2 and 8 Henry 6, c. 9, both of which essentially are still in force in Maryland, by one who seeks to recover possession of his premises from another who has either forcibly entered and detained them, or has peacefully entered and then forcibly detains the property. These rights of action have been modified by Code 1974, § 8–402(b) of the Real Property Article to include a remedy by which a landlord may recover possession of leased premises from a tenant "Holding over" without force, and by delineating the procedure for bringing any one of them.

*Greenbelt Consumer Servs.,* 272 Md. at 227–28, 322 A.2d 521 (1974) (citations omitted). If the procedure in RP § 8–402(b) did not apply to forcible detainer actions, the action could not be adjudicated entirely in court—a jury would have to make a decision on the property, in accordance with the procedure in Maryland prior to 1882.

## C. Rent escrow provisions of § 8–118

In 1982, the Maryland Legislature provided authority for a court to require payment of both past due and accruing rent into escrow on the election of a jury trial in a district court action. 1982 Md. Laws ch. 787 (predecessor to current § 8–118). One obvious purpose of this rent escrow provision was to provide some protection to a landlord or other person asserting a right to possession because of the lengthy time

involved before the case can be tried to a jury.[12] The rent escrow provision enacted in 1982 was partially repealed by Laws of Maryland (1989), chapter 685, in response to the decision of this Court in *Lucky Ned Pepper's, supra,* in which we held the required payment into escrow of past due rents unconstitutional because it unduly restricted the right to a jury trial. *See Lucky Ned Pepper's,* 64 Md.App. at 233, 494 A.2d 947. The Legislature repealed the requirement that a tenant pay past due rent into an escrow account but maintained the requirement that rent be paid as it becomes due, *see* 1989 Md. Laws ch. 685, which requirement appellant now contests as applied to her case.

Thus, we arrive at current RP § 8–118(a), which we reproduce verbatim with its section and subsection titles:

### § 8–118. Rent escrow account in certain landlord-tenant actions.

(a) *Tenant to pay rents into account.*—In an action under § 8–401, § 8–402, or § 8–402.1 of this article in which a party prays a jury trial, the District Court shall enter an order directing the tenant or anyone holding under the tenant to pay all rents as they come due during the pendency of the action, as prescribed in subsection (b) of this section.

---

**12.** This was not an entirely novel concern of the Maryland Legislature. A somewhat similar provision was enacted in 1882 along with the original statutory reference to cases of forcible entry and detainer. *See* 1882 Md. Laws ch. 355, § 4. That provision, however, was triggered upon appeal to the circuit court and required direct payment of rent to the landlord pending appeal:

> Any tenant ... shall have the right of appeal therefrom to the Circuit Court ... upon giving notice of his or her desire so to appeal within ten days from the rendition of said judgment; and if said defendant shall file with said justice ... a good and sufficient bond with one or more securities, conditioned that he or she will prosecute said appeal and well and truly pay all rent in arrear, *and all rent which shall accrue* pending the determination of said appeal, then the tenant or person in possession shall retain possession of the said premises until the termination of said appeal....

*Id.* § 4 (emphasis added).

We note that in any action under RP § 8–402, the "rents" referred to in RP § 8–118 can not be actual rent, as RP § 8–402 applies to individuals who hold over and are not therefore subject to actual rent payments under a valid, existing agreement. This fact is recognized in RP § 8–402(a)(1), which establishes liability under that section and calls for relief in the form of "actual damages caused by the holding over." Section 8–402(a)(2) thereafter provides that the damages may not be less than the apportioned rent for the holdover period under the lease. *See* RP § 8–402(a)(2) (Supp.1998).[13]

### V. Analysis of the Rent Escrow Order

█ It is clear from the above discussion that while the cause of action against forcible detainer in Maryland derives from the common law, procedurally, actions against forcible detainer are brought under RP § 8–402(b). In this statement, we distinguish the word "action" from "cause of action." The word "action" is defined in the Maryland Rules as "collectively all the steps by which a party seeks to enforce any right in a court or all the steps of a criminal prosecution." Rule 1–202(a). We have applied this definition of "action" to aid the interpretation of a Maryland statute. *See Subsequent Injury Fund v. Ehrman,* 89 Md.App. 741, 749–50, 599 A.2d 875 (1992). Under this definition, the word "action" in § RP 8–118 refers to the steps taken to enforce the common law right to possession when real property is forcibly detained. Those steps presently are established by RP § 8–402(b). While this procedure is conceived primarily as an action against tenants holding over, we must not ignore the Legislature's clear application of this procedure to cases of forcible entry and detainer, which may encompass a broader set of litigants including mortgagee/mortgagor and even possessor/trespasser. Based on the above discussion and the plain language of RP §§ 8–118 and 8–402, we conclude that appellee has brought an action under RP § 8–402 and that the rent escrow

---

13. The parties do not contend that RP § 8–402(a) applies to actions against forcible detainer.

protection of RP § 8–118 was triggered when she demanded a jury trial in the district court.

■■■■■■ With respect to appellant's defective titling argument under the Maryland Constitution, it has been abundantly clear for many years that RP § 8–402 deals with something broader than contractual rent and tenancies. See discussion of *Clark, supra.* Article III, § 29 of the Maryland Constitution provides in part that "every Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title." Md. Const. art. 3, § 29 (1981 Repl. Vol.). The Court of Appeals has stated:

> The purpose of the two complimentary requirements of this provision is to prevent the joining in one act of totally unrelated pieces of legislation, which would not have received support if offered independently, and to assure that the public and members of the legislature are adequately informed about the nature and impact of pending legislation.

*Equitable Life v. State Comm'n on Human Relations,* 290 Md. 333, 339, 430 A.2d 60 (1981). *See also Ogrinz v. James,* 309 Md. 381, 398, 524 A.2d 77 (1987). Additionally, "if the several sections of the statute refer to and are germane to the same subject matter described in the title, the statute is considered to embrace but a single subject, and satisfies the constitutional requirement." *Magruder v. Hall of Records,* 221 Md. 1, 6, 155 A.2d 899 (1959). *See also Porten Sullivan Corp. v. State,* 318 Md. 387, 407, 568 A.2d 1111 (1990). Statutes are presumed valid, and a statute will not be invalidated for defective titling unless "it plainly contravenes a provision of the constitution," and "a reasonable doubt in its favor is enough to sustain it." *Magruder,* 221 Md. at 6, 155 A.2d 899.

Appellant complains that the reading of RP §§ 8–118 and 8–402 that we adopt above is inconsistent with the terms "landlord," "tenant" and "rent" used in the title, subtitle and section names that currently appear in the code. The current caption of RP § 8–402 is "Holding over." When the phrase pertaining to forcible entry and detainer was first enacted by the Maryland Legislature, the title given to the act was, "Landlord and

Tenant," and the subtitle was "Tenant holding over." 1882 Md. Laws ch. 355.

By definition, a holdover tenant is not a tenant at the time he or she is holding over, because the tenancy has necessarily ended. *See West v. Humble Oil,* 261 Md. 190, 194, 274 A.2d 82 (1971). A holdover action is not brought by a landlord and is not defended by a tenant under the strict construction of those terms. It has been apparent for over 100 years that the terms landlord and tenant, in this statutory scheme, are used in the broadest sense. Moreover, the phrase "so far as may be," employed by the Legislature when the holdover procedure was first applied to actions against forcible entry and detainer, displays a recognition of potential problems with the literal application of the statute. We interpret the phrase as a legislative directive to apply the holdover procedure in a flexible manner to actions against forcible detainer.

The procedure for holdover actions was germane to cases of forcible entry and detainer when such cases were first mentioned in Laws of Maryland (1882), chapter 355, and this procedure is the only practical way to bring an action against forcible entry or detainer today. The procedure to oust a wrongful possessor has an analogous application in cases of forcible detainer and in cases of tenants holding over beyond the expiration of a lease. We conclude that the title of the Act adequately appraised the Legislature and public of the nature and impact of the legislation, and is therefore constitutional. Section 8–118 makes the remedy of rent escrow available to the whole of RP § 8–402, and, thus, the title of that section also complies with the Maryland Constitution.

Before leaving appellant's contention with respect to the rent escrow, we comment on the amount of the monthly payment. We review the circuit court's decision ordering the payment of $1,500 per month under an abuse of discretion standard. *See TJB, Inc. v. Arundel Bedding Corp.,* 63 Md. App. 186, 194, 492 A.2d 365 (1985). It appears that, prior to delivery of the deed in lieu of foreclosure, and pursuant to the

mortgage and note, appellant had been paying in excess of $2,500 per month. Appellee requested the court to order a monthly payment in the amount of $2,500. Appellant requested that the monthly payment be approximately $700 and proffered that this represented the fair rental value of the property. There is no dispute about the fact that the property is worth approximately $300,000 and the taxes and cost of insurance on the property are approximately $500 per month. We note again that, as with tenants holding over, there is no contractual obligation to pay rent, and thus the term "rents" in RP § 8–118 necessarily encompasses an estimation of the value of possession of the property. The court set the monthly payment at $1,500 and there is at least some justification in the record for that number as representing a fair value of the use and possession of the property. Consequently, we find no abuse of discretion on the part of the circuit court.

## VI. Analysis of the Bond Order

 We agree with appellant that the circuit court did not have the authority to require her to post a bond under RP § 8–402(b)(3). As explained below, we hold, on the facts of this case, that the rent escrow provision of RP § 8–118 and the bond provision of RP § 8–402(b)(3) are mutually exclusive, and that the bond was erroneously ordered.

The statutory scheme of RP § 8–402(b)(3) was first enacted by Laws of Maryland (1793), chapter 43, and is substantially unchanged in language over the years and identical in operation. The parties have not directed us to an appellate opinion of this state that has considered this bond provision, and our own search has failed to yield such an opinion. Section 8–402(b)(3) provides:

> If the tenant or person in possession shall allege that the title to the leased property is disputed and claimed by some person whom he shall name, by virtue of a right or title accruing or happening since the commencement of the lease ... and if thereupon the person so claiming shall forthwith appear, or upon a summons to be immediately issued by the District Court and, made returnable within six days next

following, shall appear before the court and shall, under oath, declare that he believes that he is entitled in manner aforesaid to the leased property and shall, with two sufficient securities, enter into bond to the plaintiff, in such sum as the court shall think is a proper and reasonable security to said plaintiff or parties in interest, to prosecute with effect his claim at the next term of the circuit court for the county, then the District Court shall forbear to give judgment for restitution and costs. If the said claim shall not be prosecuted as aforesaid, the District Court shall proceed to give judgment for restitution and costs and issue its warrant within ten days after the end of said term of court.

While we do not find the language of this subsection ambiguous when viewed in isolation, we note again that this language applies only "so far as may be" to actions against forcible entry and detainer. *See* RP § 8–402(b)(4)(i). Additionally, the bond provision of RP § 8–402(b)(3) appears at first glance to operate in a way that duplicates or overlaps the operation of the rent escrow provision of RP § 8–118. Both provisions protect the possessory value of disputed property when a summary action in district court is terminated or stayed in favor of more time consuming proceedings in circuit court.

As we noted in part II above with respect to the right of interlocutory appeal under CJ § 12–303(1), we must strive to avoid a construction of a statutory scheme that renders other portions of the scheme "meaningless, surplusage, superfluous, or nugatory." *GEICO*, 332 Md. at 132, 630 A.2d 713. The Court of Appeals stated in *GEICO*:

Where the statute to be construed is a part of a statutory scheme, the legislative intention is not determined from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme. When, in that scheme, two statutes, enacted at different times and not referring to each other, address the same subject, they must be read together, interpreted with reference to one another, and harmonized, to the extent possible, both with each other and with other provisions of the statutory scheme.

*Id.* (citations omitted). Given the apparent ambiguity in the statutory scheme, we shall attempt to harmonize the operation of the above provisions.

■ We begin by referring to our conclusion in Part V that the rent escrow relief of RP § 8–118 is available in this case because appellee's action against forcible entry and detainer, properly filed in district court, was removed to circuit court upon appellant's demand for a jury trial. The demand for a jury trial in a district court action under RP §§ 8–401, 8–402, or 8–402.1 triggers the potential relief under RP § 8–118(a). Since the demand for a jury automatically divests the district court of jurisdiction and confers jurisdiction in the circuit court, *Vogel v. Grant*, 300 Md. 690, 696, 481 A.2d 186 (1984); *Ruddy v. First Nat'l Bank*, 48 Md.App. 681, 684, 429 A.2d 550 (1981), *aff'd*, 291 Md. 275, 434 A.2d 581, the circuit court had jurisdiction to order the payment of rent escrow on appellee's motion, pending resolution of the title dispute and remaining claims.

■ By contrast, the bond provision of RP § 8–402(b)(3) is triggered when a defendant in the holdover proceeding disputes the plaintiff's title, and seeks to prosecute the title dispute in circuit court prior to resolution of the holdover proceeding. District courts of this state are generally without jurisdiction to decide the ownership of real property. *See* CJ § 4–402(b) (1998); *Lake Linganore Ass'n v. Jurgens*, 302 Md. 344, 488 A.2d 162 *passim* (1985). Interestingly, when title is properly disputed under this subsection, the district court is directed to "forbear to give judgment for restitution and costs." While procedurally such forbearance might take different forms,[14] it is clear that the protection available to the plaintiff in the form of a bond is only triggered by an interruption in the district court proceedings occasioned by a

---

14. Among several procedural possibilities in such a situation, the district court could order a stay pending litigation of the title dispute that contemplates ultimate resolution of the holdover action in the district court, or the entire action could be filed and resolved in the circuit court.

title dispute. When, as in the situation before this Court, the case is removed to circuit court upon a demand for a jury trial, references to a title dispute made in pleadings or motions of the defendant in district court have nothing to do with the termination of summary proceedings in district court. Similarly, once the case is transferred to circuit court, all outstanding claims can be adjudicated in a single trial, and any mention of the title dispute before that court normally would not cause the court to forbear from reaching a decision on the holdover claim. The RP § 8–402(b)(3) bond is a protection that is only available when the district court must "forbear to give judgment" in the holdover proceeding due to a genuine title dispute within the limits of subsection (b)(3).

■■■■ In the present case, appellant filed a separate complaint in circuit court disputing title in appellee. While mention of this dispute, and the grounds therefor, appears in papers filed in the district court action, appellant never requested that the district court or circuit court suspend any proceeding on account of the title dispute. Of course, it is possible for a defendant in a holdover action to dispute title but not demand a jury trial, or to neither dispute title nor demand a jury trial. In the former instance, the title dispute would be litigated in circuit court, and pending that action either court would be free to impose a bond under § 8–402(b)(3). In the latter instance, the holdover action would continue in district court to a speedy resolution. Inasmuch as the authority to order a bond under RP § 8–402(b)(3) was never implicated in this case, we are compelled to reverse this aspect of the judgment of the circuit court.

■■■■ There are two additional reasons why the bond provision of RP § 8–402(b)(3) does not apply in this case. First, as we noted at the end of Part II above, the circuit court required appellant to post a bond "to secure damages arising from [appellant's] plea of title and retention of the property." This order was in conflict with the plain language of RP § 8–402(b)(3) and the purpose of bonds ordered pursuant to that section.

■ Second, the title dispute raised by appellant in this case was not of the class of title disputes described in RP § 8–402(b)(3). That subsection requires an allegation by the person in possession of the property that "title to the leased property is disputed and claimed by some person ... by virtue of a right or title accruing or happening *since the commencement of the lease.*" RP § 8–402(b)(3) (emphasis added). We are mindful of the Legislature's intention to apply the procedure of RP § 8–402(b)(3) "so far as may be" to actions against forcible entry and detainer. RP § 8–402(b)(4)(i). We find in this caveat reason to look beyond the terms "landlord," "tenant," and "lease," as those terms necessarily have a broader meaning in holdover situations in which such a relation has terminated. We are unable, however, to read the above language of RP § 8–402(b)(3) to apply to anything other than a landlord-tenant relationship established by a lease agreement.

Historically, at common law in Maryland, tenants generally were estopped from denying title of the property in their landlords. *See Maulsby v. Scarborough,* 179 Md. 67, 71, 16 A.2d 897 (1940); *Presstman v. Silljacks,* 52 Md. 647, 656–57 (1879). There was a common law exception to the rule that permitted a tenant to assert that title in the landlord had expired at a point in time subsequent to the execution of the lease agreement. *See Presstman,* 52 Md. at 656–57. The Court of Appeals described this exception in *Presstman* as follows:

> That estoppel has been long, if not always, held to be restricted to the denial of the landlord's title at the time he made the lease, and the tenant entered under it; and both in suits for the recovery of rent, and in actions of this character, the tenant has been permitted to show, by way of defence, that the title of his landlord, which existed at the time the tenant entered under him, has expired by effluxion of time.

*Id.* Regardless of the modern fate of this rule in Maryland common law, the rule is codified in RP § 8–402(b)(3). That rule, both in the historical common law of Maryland and under

the statute, requires a lease agreement and an actual prior landlord-tenant relationship. In light of these requirements in RP § 8–402(b)(3), we conclude that, under the present language, a RP § 8–402(b)(3) bond may only be ordered in a landlord-tenant situation in which a tenant disputes the existence of title in the landlord at a point in time subsequent to execution of the lease. Appellant never entered into an agreement to lease property from appellee, and the bond provision of RP § 8–402(b)(3) has no application in the case at bar for this additional reason.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART; COSTS TO BE PAID ½ BY APPELLANT AND ½ BY APPELLEE.**