54 A.3d 742

**Demetrius NICKENS**

v.

**MOUNT VERNON REALTY GROUP, LLC, et al.**

**No. 7, Sept. Term, 2012.**

Court of Appeals of Maryland.

Oct. 19, 2012.

Thomas Davies, Murnaghan Appellate Advocacy Fellow (C. Matthew Hill, Public Justice Center, Baltimore, MD; Kim Parker of Law Office of Kim Parker, P.A., Baltimore, MD), on brief, for petitioner.

Michele Zahner Blumenfeld (Robert L. Ferguson, Jr. of Ferguson, Schetelich & Ballew, P.A., Baltimore, MD), on brief for respondents.

Russell J. Pope (Treanor, Pope & Hughes, P.A., Towson, MD), on brief, for respondents.

**58**

Heather L. Gomes, Esq., Hong Park, Esq., Legal Aid Bureau, Inc., Riverdale, MD, for amici curiae brief of Legal Aid Bureau, Inc., Civil Justice, Inc., St. Ambrose Housing Aid Center, Inc. and National Law Center on Homelessness & Poverty in support of petitioner.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and McDONALD, JJ.

HARRELL, J.

## I. FACTS AND PROCEDURAL HISTORY

We consider in this case primarily whether Respondents [1] committed an impermissible forcible entry when they enforced (through lock-out) the foreclosure purchaser's lawful possessory interest in a dwelling located at 3022 Kentucky Avenue in Baltimore by the means of the common law remedy of self-help,[2] as opposed to receiving first the issuance of a statutory writ of possession from the Circuit Court for Baltimore City. Demetrius Nickens, Petitioner, commenced residence with his parents in the dwelling on the realty previous to the institution of the foreclosure proceeding against his parents. Nickens's

---

1. Named in the trial court as defendants in the suit initiating this litigation were Mount Vernon Realty Group ("MVRG"), a property management company; James E. Parks, III, and Irene Parks, who are the owner and employee of MVRG, respectively; the law firm of Buonassissi, Henning, & Lash, P.C., ("BHL"); and, American Servicing Company ("ASC"). These parties are referred to collectively in this opinion as "Respondents." Throughout this case, Respondents acted as agents of the previous mortgagee and, subsequently, the foreclosure purchaser of the subject real property, Deutsche Bank National Trust Company ("Deutsche Bank").

2. Originating in fourteenth-century England, peaceable self-help is a common law remedy that provides title owners with the right to repossess their real property from a possessor who has no legal right to reside on that property. *See, e.g., Laney v. State,* 379 Md. 522, 543, 842 A.2d 773, 785 (2004) ("The right of peaceable self-help, therefore, is a viable mechanism for a title owner of property to obtain actual possession of real property from a holdover mortgagor."); *see also* 1 Julian J. Alexander, *British Statutes in Force in Maryland* 247 (Ward Baldwin Coe ed., 2d ed.1912) (explaining the common law background of the causes of action that gave rise to the self-help remedy).

parents owned title to and were the mortgagors as to the subject real property. Between the time his parents moved out in August 2006 and until sometime in 2007, Nickens, who remained an occupant of the dwelling after his parents moved elsewhere, paid monthly to his parents in rent an amount equivalent to their then monthly mortgage payments. The amount of the monthly mortgage payment apparently increased significantly in September 2007. Nickens's parents were unable to meet the increased mortgage payment amount. Apparently, Nickens stopped making any payments to his parents in September 2007. He continued to live alone in the house, however.

On 11 January 2008, the law firm of Buonassissi, Henning, & Lash, P.C. ("BHL"), as agent for the American Servicing Company ("ASC"), the mortgage servicer, initiated a foreclosure action against Nickens's parents, the mortgagors, in the Circuit Court for Baltimore City. Nickens notified BHL that he resided in the property when he entered an appearance in the foreclosure proceeding. The property was sold at a foreclosure sale, which was ratified by the Circuit Court on 30 January 2009. The mortgagee, Deutsche Bank National Trust Company ("Deutsche Bank"), was the successful foreclosure sale purchaser and was awarded a judgment of possession on 14 May 2009.

At some time thereafter, BHL retained the property management services of Mount Vernon Realty Group, LLC ("MVRG"), owned by James E. Parks, III, and which employs Parks' mother, Irene Parks. Also after the 14 May 2009 award of the judgment of possession, the Parkses and MVRG notified Nickens that they intended to enter the home and remove Nickens's belongings, unless he vacated the house. On 6 September 2009, having learned apparently from a letter to them from Nickens relating that he would be out of town on that day,[3] the Parkses and MVRG entered the unoccupied home, changed the locks, placed a "no trespassing" sign on the

---

3. This letter is not in the record. The parties stipulated, however, that Respondents knew Nickens would be out of town on 6 September 2009.

front door, and disposed of Nickens's personal possessions before he returned.[4, 5] Nickens estimated that his belongings, which included allegedly new appliances, computers, clothing, personal and financial papers, furniture, and other personal items, were worth $75,000.

Nickens filed a complaint against Respondents in the Circuit Court on 19 April 2010. In an amended complaint, he asserted ten counts relative to Respondents' lock-out and disposition of his personal property: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of the Maryland Consumer Debt Collection Practices Act; (3) unfair and deceptive trade practices; (4) trespass; (5) conversion; (6) *respondeat superior*; (7) emotional distress; (8) wrongful eviction; (9) intrusion; and, (10) civil conspiracy. Respondent, in responsive motions to dismiss, asserted that Nickens did

---

4. The record is silent as to the actual fate of Nickens's personalty after MVRG and the Parkses removed it from the dwelling.

5. Five days following Respondents' repossession, the Circuit Court issued Deutsche Bank a writ of possession on 11 September 2009, which had been applied for on 31 August 2009 by motion, pursuant to Md.Code, Real Prop. § 7–105.9(d)(1) (2009). That statute provides, in relevant part:

   § 7–105.9. Notice to occupants of residential property in foreclosure action.

   * * *

   (d) Notice of eviction.—
   (1) In addition to any other notice required to be given by this Code or the Maryland Rules, the person who purchases residential property in a foreclosure sale shall send, after the entry of a judgment awarding possession and before any attempt to execute the writ of possession, a written notice addressed to "all occupants" at the address of the residential property in substantially the following form:
   "IMPORTANT EVICTION NOTICE
   The circuit court for (insert name of county) has entered a judgment awarding possession of the property located at (insert address).
   YOU COULD BE EVICTED FROM THE PROPERTY ON ANY DAY AFTER (insert date).
   Below you will find the name, address, and telephone number of the person who purchased the property or the purchaser's agent.["].

not set forth in his complaint any claim upon which relief could be granted. After a hearing, the court granted Respondents' motions to dismiss, with prejudice.

On appeal, Nickens presented to the Court of Special Appeals two central questions relevant to our review here: (1) whether the Circuit Court erred in dismissing Nickens's forcible entry claim,[6] and (2) whether the Circuit Court erred in dismissing Nickens's conversion claim.[7] The intermediate appellate court affirmed, in an unreported opinion, the judgment entered by the Circuit Court. The appellate court held that Respondents did not violate Maryland law by using self-help to repossess the real property. The court concluded, as to Nickens's conversion count, that Respondents' interference with Nickens's right to his belongings was not an act of conversion because Nickens abandoned effectively any interest in his personal property by leaving it in a house in which he lacked any lawful possessory interest.

We granted Nickens's petition for a writ of certiorari, *Nickens v. Mount Vernon Realty Group, LLC,* 425 Md. 396, 41 A.3d 570 (2012), to consider two questions:

1. Did the Court of Special Appeals err in holding that the common law right of peaceable self-help permits a foreclo-

---

**6.** Nickens characterized this claim in his amended complaint as one of "wrongful eviction," but, on appeal, re-characterized it as one for "forcible entry." Although the intermediate appellate court acknowledged that post-judgment amendments to complaints are not allowed generally, *Bijou v. Young–Battle,* 185 Md.App. 268, 287, 969 A.2d 1034, 1045 (2009), the court concluded that the re-framing of the claim was valid because the amended complaint alleged specific facts that would justify relief under an established theory of recovery. *See Tavakoli–Nouri v. State,* 139 Md.App. 716, 730–31, 779 A.2d 992, 1001 (2001).

**7.** Nickens also challenged in the intermediate appellate court the Circuit Court's dismissal of his claim under the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.* (1978) ("FDCPA"). After determining that Nickens did not have standing to bring a claim under the FDCPA because he was not a consumer obligated to pay a debt, the intermediate appellate court concluded also that the FDCPA did not apply to Respondents' conduct because none of Respondents are debt collectors. Because Nickens did not challenge this disposition in his petition for writ of certiorari, we will not discuss it further.

sure purchaser to surreptitiously enter a residential property and change the locks while the resident is out?

2. Did the Court of Special Appeals err in dismissing plaintiff's conversion claim, holding that plaintiff had abandoned all personal property in the residence, despite the complete absence of evidence that he intended to abandon it?

■ We shall affirm in part and reverse in part the judgment of the Court of Special Appeals. We hold, first, that the long-recognized remedy of peaceable self-help allows a property owner to use reasonable means to repossess his, her, or its property from an unlawful possessor of that real property. Under the well-pleaded facts and reasonable inferences, even viewed in a light favorable to Nickens in this case, Respondents, as agents of the successful foreclosure purchaser, employed the peaceable self-help remedy reasonably when MVRG and the Parkses entered the residential property and changed the locks for the purpose of repossessing the property. Second, because no discovery occurred as to how Respondents, in the absence of Nickens and in the course of exercising the self-help remedy, disposed of Nickens's personal belongings, it was premature (at the least) to enter judgment for Respondents on Nickens's otherwise well-pleaded conversion claim. There being no adequate basis from which to conclude that Nickens abandoned his personalty or that Respondents acted reasonably in disposing of his belongings, we reverse the judgment dismissing the conversion count and direct remand for further proceedings.

## II. STANDARD OF REVIEW

■ Ordinarily, when a trial court purports to grant a motion to dismiss, we review that action based solely on the allegations contained within the four corners of the complaint, *Converge Servs. Group, LLC v. Curran*, 383 Md. 462, 475, 860 A.2d 871, 879 (2004); *Green v. H & R Block*, 355 Md. 488, 501, 735 A.2d 1039, 1046 (1999); however, "pursuant to Maryland Rule 2–322(c), when a trial judge is presented with factual

allegations beyond those contained in the complaint to support or oppose a motion to dismiss and the trial judge does not exclude such matters, then the motion shall be treated as one for summary judgment." *Okwa v. Harper,* 360 Md. 161, 177, 757 A.2d 118, 127 (2000). Throughout the Circuit Court's hearing on Respondents' motions to dismiss, Nickens and Respondents referred to asserted facts not included in the amended complaint, including an affidavit of Terry Lee Nickens, one of the former owners of the property; a copy of the deed of trust for the property; and, copies of email communications between the parties. The motions judge did not exclude expressly on the record that the extrinsic factual averments were not considered. Thus, we regard the trial court's action on Respondents' motions to dismiss as the grant of motions for summary judgment.

█ "[T]he proper standard for reviewing the granting of a summary judgment motion should be whether the trial court was legally correct." *Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 592, 578 A.2d 1202, 1206 (1990); *Honaker v. W.C. & A.N. Miller Dev. Co.,* 278 Md. 453, 458 n.3, 365 A.2d 287, 290 n.3 (1976); *Lynx, Inc. v. Ordnance Products, Inc.,* 273 Md. 1, 8, 327 A.2d 502, 509 (1974).

█ Upon review of a summary judgment motion, " 'we are first concerned with whether a genuine dispute of material fact exists' and then whether the movant is entitled to summary judgment as a matter of law." *Grimes v. Kennedy Krieger Inst., Inc.,* 366 Md. 29, 71, 782 A.2d 807, 833 (2001) (quoting *Williams v. Mayor & City Council of Baltimore,* 359 Md. 101, 113, 753 A.2d 41, 47 (2000)).

### III.   DISCUSSION

#### 1.   *Respondents' Use of the Common Law Remedy of Peaceable Self-Help*

Nickens does not dispute that Respondents had the legal right to possess the property at issue when MVRG and the Parkses locked him out of the house. The parties disagree as

to whether the manner by which Respondents repossessed the property (and disposed of Nickens's belongings) was lawful. Respondents maintain that they employed lawfully the common law remedy of self-help. Nickens contends that a surreptitious lock-out is not a permitted form of peaceable self-help, but rather a forcible entry, and that the procedure made available in Balt. City Code, Art. 13, § 8B–2 (2008)[8] was the only means for titleholders and their agents to acquire possession within the City.

### a. The Common Law Origin of Peaceable Self–Help

■ We concern ourselves first with the English common law statutes of 5 Richard II, Chapter 8 (1381) and 8 Henry VI, Chapter 9 (1429),[9] which define two causes of action against

---

**8.** The ordinance was enacted originally on 12 June 2008. Council B. 08–0065, 2008 Balt. City Council (Balt. City 2008). It was amended in 2011. *See* Council B. 11–0666, 2011 Balt. City Council (Balt. City 2011). In 2008, Section 8B–2 established a statutory notification process for foreclosure purchasers to dispossess individuals who lack any legal right to reside on a foreclosed property. The ordinance provided:

Section 8B. Eviction Chattels.

\* \* \*

§ 8B–2. Notice of pending dispossession.
(a) *Notice required.*
Whenever a judgment is entered in favor of a foreclosure purchaser for possession of the residential property purchased and the Court has issued a writ of possession, the foreclosure purchaser shall:
   (1) notify any occupant of the property of the date on which the writ of possession is first scheduled to be executed by the Sheriff; or
   (2) if the Sheriff agreed to provide notices of this sort, arrange for the Sheriff to notify the occupant of the date on which the writ of possession is first scheduled to be executed.
(b) *How given.*
The notice shall be:
   (1) mailed both by certified mail and by first-class mail with certificate of mailing at least 14 days before the first scheduled date of execution; and
   (2) posted on the premises at least 7 days before the first scheduled date of execution.

**9.** King Henry VI was referred to in his time as Henry the Hopeless, possibly because he became an unwilling resident in the Tower of

forcible entry. The first statute provides the original definition of forcible entry, a criminal misdemeanor, while the latter explains its counterpart in civil law, forcible detainer.[10] Forcible entry and forcible detainer are separate causes of action.[11] *See Eubanks v. First Mt. Vernon Indus. Loan Ass'n,* 125 Md.App. 642, 661–62, 726 A.2d 837, 846 (1999) ("Forcible detainer ... is distinguished from the common law misdemeanor of forcible entry, which we have recognized as an entry on real property peaceably in the possession of another."); *see also Dean v. State,* 13 Md.App. 654, 657–58, 285 A.2d 295, 297–98 (1971). Nickens equates (incorrectly) the civil remedy for forcible detainer with a cause of action against forcible entry. As we discuss below, neither statute provides

London on three separate occasions during his intermittent reigns. We could find no interesting historical nicknames for King Richard II.

**10.** An action against forcible detainer is also known as an action against forcible entry and detainer. *Black's Law Dictionary* 719. "It has sometimes been said that there are two separate offenses—(1) forcible entry and (2) forcible detainer. This may be true under the peculiar wording of some particular statute, but in general it seems to be one offense which may be committed in two different ways." *Id.* (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 487–88 (3d. ed.1982)). We note 8 Henry VI, c.9 and forcible detainer only to address Nickens's argument that his cause of action against forcible entry is supplemented by the civil remedy of forcible detainer. Nickens did not plead forcible detainer as a claim in his original complaint or on appeal.

**11.** These statutes were derived from the English common law when our Declaration of Rights was adopted on 3 November 1776 as Article 3, which provided originally, in relevant part, "[t]hat the Inhabitants of Maryland are entitled to the Common Law of England ... subject, nevertheless to the revision of, and amendment or repeal by, the Legislature of this State ...." *See Wisneski v. State,* 398 Md. 578, 589, 921 A.2d 273, 279–80 (2007). This provision was reconstituted as Article 5 of the Maryland Declaration of Rights in 1867. Article 5 provides

[t]hat the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity ....

Nickens with a basis for the relief he seeks. 5 Rich. II, c.8, is a common law criminal statute providing relief for lawful possessors of real property. 8 Henry VI c.9 is a civil remedy for a *title owner*, but not an unlawful possessor, of realty.

Before the fourteenth century in England, a title owner could enter lawfully his property and "regain his possession by force" from an unlawful possessor. *Moxley v. Acker*, 294 Md. 47, 50, 447 A.2d 857, 858 (1982) (quoting G. Liebmann, *Maryland Practice* 82–83 (vol. 2, 1976)). Thereafter, 5 Rich. II, c.8 limited the amount of "force" that a titleholder may use to repossess his property by establishing that a right of entry may be made with "not a strong hand, nor with a multitude of people, but only in a peaceable and easy manner," and made violative conduct a criminal misdemeanor.[12] The titleholder's right to gain repossession in a "peaceable" manner evolved into the common law remedy of peaceable self-help. *See, e.g., Laney v. State*, 379 Md. 522, 543, 842 A.2d 773, 785 (2004) ("The right of peaceable self-help, therefore, is a viable mechanism for a title owner of property to obtain actual possession of real property from a holdover mortgagor.")

Nickens asserts that the prohibition of forcible entry in 5 Rich. II, c.8 protects possession, but not title. He is mistaken. The statute established "that a man may be guilty of a forcible entry into . . . incorporeal hereditaments whereof a writ of entry will lie, as rents or tithes . . . . A person *cannot be guilty* of a forcible entry who breaks open *his own dwelling house, forcibly detained from him by one claiming the bare custody of it.*" *Id., reprinted in* Alexander, *supra,* at 248 (emphasis

---

12. "This statute was enacted to meet problems existing in the period following the Black Death, in which public policy demanded that real estate vacated by death be put to early use, thus making desirable limitation of the former eviction rights of property owners, which were restricted to instances of forcible conduct by squatters . . . . This limitation was supplemented by the Statute of 15 Richard II, Chapter 2 (1391) to provide that persons making unlawful forcible entries be imprisoned by justices of the peace who on complaint were required to 'go to the place where such force is made.'"
*Moxley,* 294 Md. at 50–51, 447 A.2d at 859 (quoting G. Liebmann, *Maryland Practice* 82–83 (vol. 2, 1976)).

added). The common law definition of forcible entry allows expressly property owners to repossess their properties from those who have only physical possession of it. Hence, the common law imported to Maryland in 1776 from England, currently in force through Article 5 of the Maryland Declaration of Rights, provided Respondents with the right to employ peaceable self-help against Nickens, who had only physical possession of the dwelling. Nickens could not (and did not) have a cause of action for forcible entry.

Even had Nickens pleaded originally the civil remedy of forcible detainer, he could not succeed, because a forcible detainer action under 8 Henry VI, c.9 is available only to title owners, but not to unlawful possessors, of real property. This statute extended the law of 5 Rich. II, c.8 to a civil remedy called forcible detainer, which allowed a "claimant to *regain* possession of property wrongfully detained" by one originally in lawful possession of such realty.[13] *Eubanks,* 125 Md.App. at 662–63, 726 A.2d at 847 (emphasis added); *see also Moxley,* 294 Md. at 48–51, 447 A.2d at 857–59; *see also* Alexander, *supra,* at 251.

Nickens places great weight on 8 Hen. VI, c.9, § 6, *reprinted in* Alexander, *supra,* at 305, which provides that "if any

---

**13.**  8 Henry VI, c.9 provided, in part:

> From henceforth where any doth make any forcible Entry in Lands and Tenements, or other Possessions, or them hold forcibly, after Complaint thereof made within the same County where such Entry is made ... the Justices or Justice ... shall cause, or one of them shall cause, the said Statute duly to be executed.... And if it be found ... that any doth contrary to this Statute, then the said Justices or Justice shall cause to reseise the Lands and Tenements so entered or holden as afore, and shall put the Party so put out in full Possession of the same Lands and Tenements so entered or holden as before.

*Reprinted in,* Alexander, *supra,* at 301–303. This statute applied the limitations on reentry in 5 Rich. II, c.8 by providing a civil remedy for those who lawfully "held," or possessed, realty. *Eubanks,* 125 Md.App. at 662, 726 A.2d at 847. Originally, forcible detainer required actual "force" before a cause of action existed; however, we have held that force is no longer required for a claim against forcible detainer only. *Moxley v. Acker,* 294 Md. at 53, 447 A.2d at 860. This provides another reason to distinguish forcible detainer from forcible entry as separate causes of action.

Person be put out, or disseised of any Lands or Tenements in forcible manner, or put out peaceably, and after holden out with strong hand … the Party grieved in this behalf shall have Assise of *Novel disseisin* …." Novel disseisin, or as more commonly known in the time of King Henry VI, the assize of novel disseisin, was a "writ for a tenant" who has been ejected from his land or tenement. *Black's Law Dictionary* 140 (9th ed.2009). The "institution" of the assize of novel disseisin was a tort of the 12th and 15th centuries, but became "wholly obsolete by the mid–17th century." *Id. Black's Law Dictionary* further elucidates the archaic term by explaining that novel disseisin " 'meant that if a *freeholder* of land was ejected from his property he could require the sheriff to set up a jury of twelve' " and the King's Justices would then question " 'the jurors whether the *freeholder* had been *illegally* put out of his holding, as he complained, and if they said that he had then the court would restore the land to him at once.' " *Id.* (quoting Donald W. Sutherland, *The Assize of Novel Disseisin* 1–2 (1973)) (emphasis added). In the time of 8 Hen. VI, c.9, a freeholder had a claim of right or inheritance to a fee simple or any actual or potential real property possessory interest under the law. *Id.* at 736. Because Nickens is not a freeholder, in that he does not have any right to lawful possession of the dwelling in question, he does not have a cause of action under 8 Hen. VI, c.9, § 6 or, as discussed above, under 5 Rich. II, c.8.

b. The Development of the Self–Help Remedy in Maryland

There being no common law support for Nickens's action for forcible entry, we examine next whether, as Nickens asserts, Respondents' conduct was an unlawful use of self-help. Self-help is a long-established common law remedy for titleholders in Maryland.[14] We considered whether a titleholder has the

---

14. Thirteen other domestic jurisdictions continue to uphold the self-help remedy for foreclosure purchasers to gain possession of properties to which they have a legal right. *See generally,* Annot., *Right of Landlord Legally Entitled to Possession to Dispossess Tenant Without*

right, without judicial process, to enter and repossess his property from another first in *Manning v. Brown,* 47 Md. 506 (1878). There, the property owner entered, without prior notice, onto the premises where the plaintiff resided and removed the plaintiff's belongings. *Id.* at 509. We held that the defendant titleholder had a right of entry by virtue of a life estate; that she was entitled to order the plaintiff to vacate the premises; and, that the plaintiff had no claim for damages for the defendant's actions. *Id.* at 510–12.

> Significant to the present case, in *Manning* we determined
>
> that if the owner of land wrongfully held by another, enter and expel the occupant, but makes use of no more force than is reasonably necessary to accomplish this, he will not be liable to an action of trespass *quare clausum* . . . although, in order to effect such expulsion and removal, it becomes necessary to use so much force and violence as to subject him to indictment at common law . . . under the statute for making a forcible entry.[15]

*Id.* at 512. Moreover, we discussed that in the common law, "wherever a right of entry existed, the party entitled to such right might lawfully enter, oust the disseisor, and regain the possession by force, if force was necessary for that purpose." *Id.* at 511. We observed further that 5 Rich. II, c.8 required the peaceable exercise of the right of entry to address the risks of violence and disorder, which an absolute right of entry may entail. *Id.* Indeed, we emphasized particularly that a standard of reasonableness applies to the exercise of a title-holder's right to self-help in possessing his property: "[i]f, in effecting the entry . . . there be any unnecessary force used, *or any want of unreasonable care,* whereby injury be done the

*Legal Process,* 6 A.L.R.3d 177 (1966) (updated by cumulative supplements through 2012).

**15.** At common law, *quare clausum,* or trespass *quare clausum fregit,* was "an action to recover damages resulting from another's unlawful entry on one's land that is visibly enclosed." *Black's Law Dictionary* 1643.

person *or the goods* of the occupant, an action may be sustained for such injury ..." *Id.* at 512 (emphasis added).[16]

More modern case law details the development of forcible entry. In *K & K Management, Inc. v. Lee*,[17] we extended the right to peaceable self-help to the repossession of commercial property, and held that "self-help is not a prohibited means of acquiring repossession of premises upon termination of a commercial lease, so long as the repossession can be effected peaceably." 316 Md. 137, 178, 557 A.2d 965, 985 (1989). Although *K & K Management* involved a commercial, rather than residential, property, we do not believe that there exists a significantly different risk of retaliatory violence for the repossession of realty in either context. The commercial lease tenants in *K & K Management* had invested considerable time and work in the family restaurant they built in the defendants' motel. *Id.* at 144–47, 557 A.2d at 968–70. The plaintiffs were devastated when defendants closed the family restaurant after locking-out the plaintiffs during the middle of the night. *Id.*

---

**16.** Although maintaining that *Manning* does not apply to his claim of forcible entry—even though the case specifically refers to an action for forcible entry, *id.*—Nickens asserts rather that *Moxley v. Acker*, 294 Md. 47, 447 A.2d 857 (1982), is relevant to his case. In *Moxley* we held that the law of forcible entry extended to peaceable entries in an action for forcible detainer. *Id.* at 50–51, 447 A.2d at 859. *Moxley* addresses, however, an action against forcible detainer, not forcible entry. *Id.* at 49–50, 447 A.2d at 858–59. Moreover, in *Moxley* we continued to recognize a distinction between the separate causes of action of forcible entry and forcible detainer. *Id.* As Nickens's case involves a forcible entry claim, and not the civil remedy of forcible detainer, the reasoning of *Moxley* is not relevant to our consideration of Nickens's present claim.

**17.** *K & K Management* involved two motel owners as defendants and two restaurateurs as plaintiffs, the latter having opened a family restaurant in the defendants' motel. During the early morning hours, defendants, declaring that the lease was terminated, changed the locks of the restaurant and locked out effectively the plaintiffs. They provided the plaintiffs several opportunities to remove their belongings that had been left inside the restaurant as a result of the lock-out. 316 Md. 137, 141–47, 557 A.2d, 965, 966–70 (1989). We held that, although the defendants' actions were unlawful based on a breach of contract, their manner of repossession was peaceful and not illegal per se. *Id.* at 178, 557 A.2d at 985.

at 146–47, 557 A.2d at 969–70.   Considering these facts and acknowledging also that there is a risk of severe loss and harm in repossessing residential property, the potential for retaliatory violence strikes us as inherent to any forcible real property repossession.   Indeed, the potentially volatile settings of both commercial and residential repossessions indorse a peaceable remedy such as the common law right to self-help. *Id.* at 179, 557 A.2d at 985;  *see also Postelle v. McWhite,* 115 Md.App. 721, 732–33, 694 A.2d 529, 534 (1997) (affirming *K & K Management* ).

More recently, this Court spoke approvingly of a landlord's use of the self-help remedy in a criminal law setting in *Laney v. State,* 379 Md. 522, 842 A.2d 773 (2004).[18]   In considering the question of whether the defendant, a defaulting mortgagor, had an expectation of privacy in the foreclosed-upon property, such that a search of the premises by an agent of the governmental mortgagee violated his Fourth Amendment rights, we noted that a lock-out was a peaceable self-help remedy available to repossess property from a holdover mortgagor.   *Id.* at 542, 842 A.2d at 785;  *see also Empire Properties, LLC v. Hardy,* 386 Md. 628, 640–41, 873 A.2d 1187, 1194 (2005) (citing *Laney* as support for the conclusion that statutory procedures and "peaceable" self-help remedies without judicial involvement are available to a foreclosure purchaser). We commented specifically that "seeking the court's assistance in dispossessing the holdover mortgagor is only one option available to the purchaser to obtain possession from a holdover mortgager.   Failure to exercise that option does not

---

**18.** In *Laney,* Laney defaulted on his home mortgage, which had been guaranteed by the Department of Veterans Affairs (DVA).  The home was sold at a foreclosure sale, with Laney having received the statutorily required advance notice.  Title passed to the DVA, which was the successful bidder.  After an agent of the DVA heard there were explosives and weapons in the house, he entered the dwelling, confirmed the allegation, and called the police.  The explosives and firearms were found and removed by State and federal authorities.  *Laney,* 379 Md. at 527–30, 842 A.2d at 775–78.  Laney was charged criminally and moved to suppress the incriminating items discovered in the dwelling.  *Id.* at 530–31, 842 A.2d at 778.  We affirmed the denial of his suppression motion.  *Id.* at 551, 842 A.2d at 790.

undermine the mortgagee's ownership of the property nor the right to possession." *Laney*, 379 Md. at 542, 842 A.2d at 785.

▇ Prior notice to the unlawful possessor that repossession of the realty will occur is not required. As we indicated in *K & K Management*, peaceable restitution of property may occur even without prior notice because it is "entirely compatible with a desire to avoid a confrontation possibly leading to violence." 316 Md. at 178–79, 557 A.2d at 985.

Self-help continues to be a remedy available in Maryland generally for titleholders to repossess their properties. Similar to the plaintiff in *Manning*, Nickens resided at the property in Baltimore by "the permission and under the authority" of his parents, who had been the property's mortgagors. *Manning*, 47 Md. at 510–11. Once the property was foreclosed and sold to Deutsche Bank, "his right [to reside there] ceased." *Id.* at 510. Unlike the plaintiffs in *K & K Management*, Nickens was notified prior to Respondents' actions that he had no lawful possessory claim to the premises in which he resided, and that Respondents would act to repossess the property unless he vacated. In the Circuit Court hearing on Respondents' motions to dismiss, Nickens's counsel confirmed this:

Q: [He] knew ultimately he was going to have to [leave] at some point, didn't he?

A. Yes sir.

▇ As we held in *Manning*, to effectuate lawfully the right to self-help, a titleholder must use reasonable care in dispossessing the individual residing at the property. *Id.* at 512. To determine if the exercise of this remedy is lawful, we apply a standard of reasonableness based on the attendant circumstances. Under the undisputed material facts on this record, Respondents acted reasonably in effecting the lock-out as a matter of law. The record shows that Nickens knew, since early 2009, that his parents' property had been sold at a foreclosure sale. Nickens admitted that he had no legal right to remain on the property. The parties stipulated that Nickens received notice that Respondents intended to enter and

repossess the property;[19] nevertheless, even if no notice was given, we hold that notice is not required in order to exercise peaceable self-help. *See K & K Management,* 316 Md. at 178–79, 557 A.2d at 985.[20] Respondents repossessed the property when they knew that Nickens was out of town. Like the defendants in *K & K Management* and in *Laney,* Respondents' exercise of self-help was reasonable because their intention was to avoid confrontation or the potential for retaliatory violence. Indeed, no such violence occurred here. Respondents' conduct was peaceable in fact (as was Nickens's post-eviction conduct, for that matter).

Nickens maintains that, even if Respondents had the right to employ self-help, they were obliged to complete the statutory process available in Baltimore City in order to repossess the realty. In this regard, Nickens points to the 2008 ordinance at Balt. City Code Art. 13, § 8B–2, which, Nickens asserts, provided Respondents an exclusive procedure to possess the property in 2009 by waiting for a writ of possession to issue and having the writ executed by a Sheriff in Baltimore City, after two weeks' notice to Nickens.[21] In considering Nickens's argument, we determine first whether Section 8B–2 abrogated or superseded, in Baltimore in 2009, the common law right to peaceable self-help. "It is axiomatic that statutes are presumed not to make any alterations or innovations in the common law further than is expressly declared, and that when a statute does expressly revise the

---

**19.** None of the written notices are part of the record as this case reached us.

**20.** Neither the federal Protecting Tenants at Foreclosure Act of 2009, Pub.L. No. 111–22, 123 Stat. 1660, § 702, or its Maryland analog, Md.Code, Real Prop. § 7–105.6, are applicable to the present case for at least two reasons: (1) neither was asserted to be applicable by Nickens; and, (2) Nickens was not a "bonafide tenant" under either provision.

**21.** As explained above, Respondents applied for a writ of possession on 31 August 2009 by motion, pursuant to Md.Code, Real Prop. § 7–105.9(d)(1), *see supra.* The notice required prior to eviction from a foreclosed realty by Section 7–105.9(d)(1) is "[i]n addition to any other notice required to be given by this Code or the Maryland Rules." *Id.*

common law, it should be strictly construed." *Brooks v. Lewin Realty III, Inc.,* 378 Md. 70, 92, 835 A.2d 616, 628–29 (2003); *see Zetty v. Piatt,* 365 Md. 141, 153, 776 A.2d 631, 638 (2001) (noting that unless there is an otherwise clear and contrary indication, we assume that an ordinance or statute did not intend to nullify, amend, or supersede the common law).

When interpreting statutory language, "the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Lark v. Montgomery Hospice, Inc.,* 414 Md. 215, 228, 994 A.2d 968, 976 (2010) (quoting *Lockshin v. Semsker,* 412 Md. 257, 276, 987 A.2d 18, 29 (2010)); *see also Fisher v. Eastern Corr. Inst.,* 425 Md. 699, 707, 43 A.3d 338, 343 (2012). Our goal is, as much as possible, to harmonize Section 8B–2 with the common law remedy of peaceable self-help (as derived from its antecedent English statutes), for "various consistent and related enactments, although made at different times and without reference to one another, nevertheless should be harmonized as much as possible." *Pete v. State,* 384 Md. 47, 65–66, 862 A.2d 419, 429–30 (2004) (citations omitted); *see also Fisher,* 425 Md. at 710, 43 A.3d at 344 (stating that "various statutory provisions covering the same subject matter are to be construed, if at all possible, so that together the sections harmonize with one another and no section is rendered nonsensical or nugatory").

For a statute or ordinance to abolish a right available through the common law, the statutory language must indicate an express abrogation or an abrogation by implication by adoption of a statutory scheme that is so clearly contrary to the common law right that the two cannot occupy the same space. *Selig v. State Highway Admin.,* 383 Md. 655, 677, 861 A.2d 710, 723 (2004) ("In order to hold that a statute has abrogated common law rights existing at the date of its enactment, it must clearly appear that they are repugnant to the act, or the part thereof invoked, that their survival would in effect deprive it of its efficacy and render its provisions

nugatory."). *See also Robinson v. State*, 353 Md. 683, 693, 728 A.2d 698, 702 (1999) (explaining that there is a "generally accepted rule of law that statutes are not presumed to repeal the common law 'further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law.'") (quoting *Lutz v. State*, 167 Md. 12, 15, 172 A. 354, 356 (1934)).

The express language of Section 8B–2 does not suggest that adoption of the ordinance abrogated or superseded expressly the common law remedy of peaceable self-help available to property owners and their agents in Baltimore City. The legislative history of the ordinance does not represent that it nullifies, amends, or supersedes Maryland pre-existing common law. § 8B–2; *see Zetty*, 365 Md. at 153, 776 A.2d at 638. The text of Section 8B–2 does not indicate that *all* foreclosure purchasers *must* resort to its statutory repossession process exclusively; rather, the language implies that it is but another manner by which a foreclosure purchaser may repossess property in Baltimore. In short, the express language of Section 8B–2 does not clearly indicate that the common law right to peaceable self-help is "repugnant to the act, or the part thereof invoked, that [its] survival would in effect deprive it of its efficacy and render its provisions nugatory." *Selig*, 383 Md. at 677, 861 A.2d at 723.

Based on the express language of the ordinance, we conclude that the Mayor and City Council of Baltimore did not intend to supersede pervasively and comprehensively the use of the common law remedy of self-help in Baltimore. If they intended otherwise, they did not convey clearly that intent. Therefore, we interpret the ordinance and the common law remedy of peaceable self-help as coexistent and concurrent in the universe of Baltimore City from 2008 to the present day, such that a titleholder and its agents may choose either the process of Section 8B–2 or employ peaceable self-help by reasonable means.[22]

___

22.  The choice between which process to employ in a given case could be influenced by a number of factors, such as (but not limited exclusive-

The public policy of restoring the lawful possession of real estate peaceably also calls for our affirmation of the reasonable use of self-help in foreclosure repossession. For a foreclosure purchaser dispossessed of his, her, or its property by a defaulted mortgagor's or illegal occupant's recalcitrant possession, the common law right to self-help provides a nonviolent, reasonable approach to reclaiming the realty to which he, she, or it is entitled. *See, e.g., Manning,* 47 Md. at 512, *K & K Management,* 316 Md. at 179, 557 A.2d at 985; *Empire Properties,* 386 Md. at 640, 873 A.2d at 1194. The significance of the reasonable use of peaceable self-help to foreclosure purchasers is even greater in light of the many cases in which a mortgagor or trespasser refuses to leave a foreclosed property:

> "Once the hammer comes down at the auction, there is a reasonable tendency for the purchaser to become very uneasy about the borrower's continued possession: waste, insurance issues, liability issues, removal of sinks, tubs, fixtures and built-in appliances, cabinets, storage sheds, pools, equipment, all seem up for grabs as a borrower, sometimes furious, malicious and hot-tempered, moves out. Then, too, a borrower facing a discharge in bankruptcy may be tempted to scorch the earth as leaving, facing no apparent liability to the deficiency. Clearly, once the sale has been ratified and the balance of the purchase price paid, the purchaser must be put in prompt possession. . . . "

*Empire Properties,* 386 Md. at 649–50, 873 A.2d at 1200 (quoting Alexander Gordon IV, *Gordon on Maryland Foreclosures* § 26.3, at 1062–64 (4th ed.2004)) (emphasis in *Empire Properties*). Thus, the Court of Special Appeals and the Circuit Court were correct, on this record, in entering summary judgment for Respondents as to Petitioner's "forcible entry" claim.

---

ly to): relative risk management considerations; relative cost and time to complete; and, relative certitude and predictability of the two processes.

### 2. Respondents' Removal of Nickens's Personalty and the Tort of Conversion

We consider next whether Nickens pleaded a potentially triable claim that Respondents, when they used peaceable self-help to enter and repossess the real property at issue, committed the tort of conversion in their disposal of Nickens's personalty found within the dwelling. Conversion is an intentional tort that requires an exertion of ownership or dominion over another's personal property in denial of or inconsistent with the owner's right to that property. *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 261, 841 A.2d 828, 835 (2004); *Allied Investment Corp. v. Jasen*, 354 Md. 547, 560, 731 A.2d 957, 963 (1999).

An act of ownership may occur by "initially acquiring the property or by retaining it longer than the rightful possessor permits," and includes the destruction of another's property as well as a "wrongful, tortious or unlawful taking of property from the possession of another by theft, trespass, duress, or fraud and without [the owner's] consent or approbation, either express or implied." *Darcars Motors*, 379 Md. at 262, 841 A.2d at 835–36 (quoting *Wallace v. Lechman & Johnson, Inc.*, 354 Md. 622, 633, 732 A.2d, 868, 874 (1999)). Wrongful deprivation of property to which another is entitled, and not merely wrongful acquisition of that property, is the essence of conversion. *Id.* at 262, 841 A.2d at 836.

Although having the intent to exercise dominion or control over another's property is a necessary element of an action for conversion, a defendant is liable nonetheless for conversion if he, she, or it acted in "good faith and lacked any consciousness of wrongdoing," as long as the act is an interference with the owner's control of the property. *Id.* at 261, 841 A.2d at 836. Property cannot be "converted" once it is abandoned because abandonment entails the relinquishment of any interest to the property; hence, the abandoned personalty will "[belong] to anyone who takes possession of it." *Steinbraker v. Crouse*, 169 Md. 453, 457–58, 182 A. 448, 450 (1936). The relinquishment, however, must indicate affirmatively that

the owner has "walk[ed] off and [left] it with no intention to again claim it or exercise rights of ownership over it." *Id.*

In their briefs, Respondents assert that, because Nickens was not in lawful possession of the realty, all of his belongings within the realty were abandoned and, hence, no conversion occurred, no matter how his personalty was disposed of by them. To support this argument, Respondents rely on our discussion of the abandonment concept in *Laney*, 379 Md. at 545–51, 842 A.2d at 785–90. *Laney* involved, however, the abandonment doctrine as it relates to the U.S. Constitution's Fourth Amendment guarantee against unreasonable searches and seizures and the related concept of the expectation of privacy; consequently, *Laney* is of little value in deciding the question of conversion in the civil law context of the present case. Whether one has a legal claim to, or a reasonable expectation of, privacy in the real property where his personalty is located is irrelevant to whether one has relinquished his interest in the personalty under the common law regarding real and personal property. Rather, the issue in civil action for conversion is whether the owner of the personalty manifested an intent to walk away "with no intention to again claim [the personalty] or exercise" his rights of ownership over his personal property. *Steinbraker*, 169 Md. at 458, 182 A. at 450.

In the present case, a reasonable inference from the well-pleaded facts is that Nickens did not manifest an intent to abandon his belongings in the house simply because he continued his occupancy after the foreclosure sale became final, or when he notified the Parkses that he would be out of town for a period, but would return impliedly. The record does not show that Nickens expressed in any way to the Parkses or MVRG that he meant to relinquish his interest to his belongings when he traveled out of town. Abandonment had not been demonstrated as a matter of law, on the record as developed, as of the time summary judgment was entered in Respondents' favor.

Although it is clear that Nickens did not have any legal claim to the possession of the realty, the peaceable self-help

remedy calls for the foreclosure purchaser's and its agents' exercise of reasonable means in dealing with the mortgagor's or occupant's personalty, as well as in the manner of repossessing the realty. For example, in affirming the landlord's use of self-help, without notice, in *K & K Management,* we noted that the landlord provided the evicted tenants with specific opportunities to collect their personal possessions. 316 Md. at 146, 557 A.2d at 969.

Our line of self-help remedy cases espouses the exercise of reasonable means to dispose of personalty, despite an occupant's lack of lawful possession of the realty. The foreclosure purchaser and its agents have the duty to use peaceable and reasonable self-help with "no more force than necessary" to repossess the real property. *Manning,* 47 Md. at 512. Disposition of the personalty found therein, therefore, is also held to a standard of reasonableness, and those actors may be liable for the disposition of the personalty that is not accomplished in a reasonable way. This rule is consistent with the peaceable purpose of the self-help remedy. *See K & K Management,* 316 Md. at 178, 557 A.2d at 965.

Here, at the time summary judgment was entered, the record was silent as to how Respondents disposed of Nickens's personal property found within the house. Nickens pleaded properly in his amended complaint the elements of the tort of conversion. Despite the Parkses' and MVRG's threats that they would repossess the house, the record as developed to that point, revealed no evidence as to whether, prior or subsequent to the repossession, they alerted Nickens as to when or how they would dispose of his property, whether he would have an opportunity to collect his property later, or for how long they or someone might hold his property. There was no apparent interaction between Nickens or Respondents regarding the disposal of the property, unlike what occurred in *K & K Management,* 316 Md. at 146, 557 A.2d at 969. In short, there was no evidence that Respondents acted reasonably as to the disposition of Nickens's personalty. Although Respondents had the legal right to use self-help, it remains to

be determined whether they exercised this right reasonably as to Nickens's personalty. Discovery may reveal material facts relevant to answering this question and whether a triable claim exists.

As the self-help remedy is rooted in the common law and usually occurs outside the judicial process, the courts must ensure that mortgagors' and evicted tenants' or occupants' interests in their personalty are protected as much as reasonably possible under the circumstances. The state of the record in the present case lacks any indication of what Respondents did with Nickens's personalty and, hence, Respondents were not entitled to judgment as a matter of law on the conversion claim. Discovery and further proceedings about the circumstances surrounding this aspect of Respondents' exercise of self-help is required. It was reversible error to enter summary judgment for Respondents on Nickens's conversion count.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART; JUDGMENT ON COUNT VIII OF NICKENS'S AMENDED COMPLAINT (FORCIBLE ENTRY) AFFIRMED BUT REVERSED AS TO COUNT V (CONVERSION); CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND THE CASE FURTHER TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS AS TO COUNT V NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE DIVIDED EQUALLY BETWEEN PETITIONER AND RESPONDENTS.**